**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**


| | | |
|---|---|---|
| CHARLES EMERMAN, *et al.*, | ) | CASE NO. 1:13cv2546 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| FINANCIAL COMMODITY | ) | |
| INVESTMENTS, L.L.C., *et al.*, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendants. | | |

Pending before the Court is Plaintiffs Charles Emerman and Sidney Fund, L.P.'s "Motion to Dismiss Counterclaims for Failure to State a Claim upon which Relief May be Granted under Fed. R. Civ. P. 12(b)(6)."[1]  (Doc. No. 38.)  For the following reasons, Plaintiffs' Motion is GRANTED.

### I. Procedural Background

Plaintiffs Charles Emerman and the Sidney Fund LP ("Plaintiffs") filed a Complaint against Defendants Craig B. Kendall and Financial Commodity Investments, L.L.C. ("FCI") on November 18, 2013, alleging (1) fraud and misrepresentation in violation of 7 U.S.C. § 60; and, (2) fraud in the inducement in violation of 7 U.S.C. § 6(b).  (Doc. No. 1.)  Plaintiffs filed a First Amended Complaint on March 14, 2014, which added claims for breach of fiduciary duty under

---

[1] This matter is before the Court upon consent of the parties entered August 28, 2014. (Doc. No. 19.)

Virginia and Ohio common law.  (Doc. No. 3.)

In their First Amended Complaint, Plaintiffs allege Defendant Kendall is the sole owner of FCI, a commodity trading advisor.  (Doc. No. 3 at ¶¶  4, 7.)  One product offered by FCI was a Credit Premium Program ("CPP"), which was advertised as a discretionary trading program.  *Id*. at ¶¶ 12, 16.  In September 2009, FCI published a Due Diligence Questionnaire regarding the CPP, which allegedly represented that the trading method of the CPP would be a trader-driven discretionary trading model directed by FCI employee Gaurev Gupta.  *Id.* at ¶¶17, 19-21.

Around December of 2010, Plaintiffs made a $100,000 investment in the CPP based upon disclosures contained in the Questionnaire and other representations made by agents and employees of FCI.  *Id*. at ¶¶ 21-22.  On May 1, 2011, FCI issued a Disclosure Document in which it notified clients that they would be informed of any changes in FCI's trading approach that FCI considered to be material.  *Id*. at ¶¶ 24, 30.  On August 2, 2011, Plaintiff Sidney Fund invested $150,000 in the CPP.  *Id*. at ¶ 31.  In that same month, FCI allegedly switched from the trader-driven discretionary model to a systematic computer based trading model.  *Id*. at ¶¶ 32, 33.  Plaintiffs allege FCI failed to make Plaintiffs aware of this change.  *Id*. at ¶ 34.  After this change, Plaintiffs began to suffer significant investment losses in the CPP.  *Id.* at ¶ 35.  When inquiries were made, Defendants allegedly reported it was a "bad market" and "there were no other internal explanations for the losses."  *Id.* at ¶ 37.  Plaintiffs claim they did not become aware of the change in the trading methodology until after April 2012.  *Id*. at ¶ 39.  Upon being informed about this change, Plaintiffs withdrew their remaining investment funds from the control of FCI, allegedly suffering a substantial loss.  *Id.* at ¶  40.

On April 9, 2014, Defendant Kendall filed a Motion to Dismiss for Failure to State a Claim and for Improper Venue or, in the Alternative, Motion to Transfer Action to the National Futures Association ("NFA") Arbitration Panel.  (Doc. No. 6.)  The motion was denied on July 22, 2014.[2]  (Doc. No. 14.)

---

[2]  Defendant Kendall also filed a motion to represent FCI in his *pro se* capacity.  (Doc. No. 5.)  During a telephonic status conference on April 21, 2014, the Court informed

Defendants subsequently filed an Answer and Counterclaims on August 5, 2014.  (Doc. No. 15.)  Therein, Defendants claimed that "at all times relevant to this matter, FCI's Credit Premium Program ("CPP") has been a trader-driven discretionary trading model" and "at no time during the life of CPP did FCI or Craig B. Kendall move to a systematic computer-based trading model." *Id*. at ¶¶ 5, 6.  As Counterclaims, Defendants asserted the following causes of action: (1) declaratory judgment; (2) abuse of process; (3) barratry; and, (4) civil conspiracy.  (Doc. No. 15 at pp. 2-3.)  On August 28, 2014, Plaintiffs moved to dismiss Defendants' counterclaims for failure to state a claim upon which relief may be granted.  (Doc. No. 21.)

On September 16, 2014, a Case Management Conference was conducted, at which time certain discovery and dispositive motions deadlines were set.  (Doc. Nos. 23, 24.)  In addition, the Court ordered that the parties would have until December 1, 2014 to file a motion for leave to join parties and/or amend the pleadings.  (Doc. No. 24 at 1.)  A settlement conference was scheduled for January 8, 2015.  (Doc. No. 25.)

Three days prior to the settlement conference, on January 5, 2015, Plaintiffs filed a Motion for Leave to Amend Complaint (Doc. No. 27.)  Therein, Plaintiffs sought leave to add Financial Investments, Inc. ("FII") as a Defendant and add additional causes of action "to encompass the actions of said new Defendant." *Id*. at 1.  Specifically, Plaintiffs alleged FII is also owned by Defendant Kendall and shares the same physical address and phone numbers as Defendant FCI.  Plaintiffs maintained that FII "was the actual entity with which Plaintiffs were transacting business during all times pertinent to the Complaint." *Id.*  Plaintiffs alleged Defendant FCI did not exist as a corporate entity and, instead, FII was the "only legal entity in existence during the time period at issue in this matter." *Id*. at 5.  Plaintiffs asserted Defendants

---

Kendall that he was prohibited from representing a corporation *pro se* and denied his motion.  (Doc. No. 7. at 2.)  Thus, the Court construed Kendall's Motion to Dismiss or, in the Alternative, Transfer as being filed on behalf of Kendall in his individual capacity only. *Id*.

3

"either negligently or affirmatively" hid this information from potential investors.[3]  *Id.*

On January 27, 2015, the Court issued an Opinion & Order granting Plaintiffs' Motion for Leave to Amend the Complaint. (Doc. No. 33.)  On that same date, the Court denied Plaintiffs' Motion to Dismiss Defendants' Counterclaims (Doc. No. 21) as moot.  However, the Court noted that, "[i]n the event Defendants choose to reassert Counterclaims in response to the Second Amended Complaint, Plaintiffs are not barred from seeking dismissal of said claims." (Doc. No. 33 at 9.)

Plaintiffs filed their Second Amended Complaint on February 13, 2015.  (Doc. No. 34.) Therein, Plaintiffs restate their allegations regarding FCI's alleged change from a trader-driven discretionary trading model to a computerized trading model.  *Id.* at ¶¶ 46-67.  In addition, the Second Amended Complaint adds FII as a Defendant, and alleges it is a Virginia corporation "whose sole owner, on information and belief, is Defendant Kendall as its 'control person.'"  *Id.* at ¶ 5.  The Complaint then sets forth detailed allegations regarding FII's and FCI's corporate histories, as well as a series of allegations regarding regulatory enforcement proceedings initiated by the Commodities Futures Trading Commission ("CFTC") against FII (as a result of which a $130,000 fine was allegedly imposed as well as a permanent injunction allowing for monitoring of FII's compliance with CFTC reporting regulations).  *Id.* at 8-28.  Plaintiffs allege that "FCI was a fictitious name used deceptively by FII for the advertisement of their commodities investment programs, including, but not limited to the Defendants' so-called Credit Premium Program."  *Id.* at ¶ 10.  Plaintiffs maintain Defendants failed to disclose this fact or the fact that FII had a history of regulatory enforcement proceedings and violations.

Based on the above allegations, the Second Amended Complaint asserts claims for (1) fraud and misrepresentation in violation of 7 U.S.C. § 60; (2) fraud in the inducement in

---

[3]  Plaintiffs also filed a  Motion to Continue Mediation.  (Doc. No. 28.)  The basis for Plaintiffs' motion was "the newly discovered information tending to prove that a currently unnamed third party, Financial Investments Inc. was both the real party in interest and real party responsible for the actions complained of in the original complaint."  *Id.*  Plaintiffs' motion to continue was granted on January 6, 2015.

4

violation of 7 U.S.C. § 6(b); (3) breach of fiduciary duty under Virginia common law; and, (4) breach of fiduciary duty under Ohio common law.  (Doc. No. 34.)

Defendants filed an Answer to the Second Amended Complaint and Counterclaims on February 18, 2015.  (Doc. No. 37.)  Therein, Defendants assert Defendant Kendall was the founder and president of FCI and "has been the day-to-day manager of FCI since its inception." *Id.* at ¶ 11, 12.  Defendants claim Kendall "has always had and maintained ultimate decision-making authority on all trades and investment decisions by FCI." *Id*. at ¶ 13.  Defendants again assert that, at all times relevant to the instant action, the "CPP has been a trader-driven discretionary trading model" and "at no time during the life of the CPP did FCI or Craig B. Kendall move to a systematic computer-based trading model." *Id.* at ¶¶ 14-15.  With respect to Plaintiffs' allegations regarding FII, Defendants allege "FII was in no way involved with Plaintiffs or any of the transactions or occurrences that are the subject of Plaintiffs' Amended Complaint." *Id.* at ¶ 6.  Defendants also claim FCI was "not registered as a fictitious entity, but was in fact, a Virginia corporation registered with the Virginia Secretary of State." *Id*. at ¶ 10. Defendants assert the same four Counterclaims: (1) declaratory judgment; (2) abuse of process; (3) barratry; and, (4) civil conspiracy.  (Doc. No. 37.)

On March 11, 2015, Plaintiffs filed a Second Motion to Dismiss Counterclaims for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6).  (Doc. No. 38.)  Defendants filed a Brief in Opposition on March 27, 2015.  (Doc. No. 39.)  Plaintiffs did not reply.

## II.  Legal Standard

### A.   Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  The plausibility requirement is not a "probability requirement," but requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.*

5

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.Civ. P. 8(a)(2).  "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S.Ct. at 1949 (citations omitted).  In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[ ] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's conclusory allegations as true.  *Id*. at 1949-51.

Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[, as] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Rather, "[i]n order to survive a motion to dismiss under Rule 12(b)(6), a complaint must appear 'plausible' on its face, if all of its factual allegations are assumed to be true." *Alli v. City of New York*, 2012 WL 4887745 (S.D.N.Y. Oct.12, 2012) (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 560–70.  Consequently, a claim should not be dismissed unless it is unsupported by the law or the facts alleged are insufficient to state a plausible claim for relief.

**B.     Materials Considered in Resolving Plaintiffs' Motion**

In support of their Brief in Opposition to Plaintiffs' Motion to Dismiss, Defendants attach the "Second Affidavit of Rendelle (Ray) Yzer" dated July 15, 2013.  (Doc. No. 39-1.)  Therein, Mr. Yzer purports to "quash" certain statements made in his previous Affidavit, which he signed on July 13, 2012 and is attached as an Exhibit to both the original and First Amended Complaints.[4]  Mr. Yzer's "Second Affidavit" is not attached to Defendants' Answer and Counterclaims, nor is it referenced at any point in that pleading.

A motion to dismiss under Rule 12(b)(6) tests the adequacy of the pleadings and, thus, a

---

[4]  Mr. Yzer's previous Affidavit, dated July 13, 2012, is not, however, attached to Plaintiffs' Second Amended Complaint.

court may generally not consider materials beyond the contested pleading itself in ruling on the motion.  *Winget v. J.P. Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008).  The Sixth Circuit has held, however, that when a court is presented with a Rule 12(b)(6) motion, "it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are central to the claims contained therein."  *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  *See also Rondigo L.L.C. v. Township of Richmond,* 641 F.3d 673, 681 (6th Cir. 2011).

If materials other than those referenced above are offered in support of a motion to dismiss, the motion may be treated as one for summary judgment and disposed of as provided in Fed. R. Civ. P. 56.  *See* Fed. R. Civ. P. 12(d).  It is within the court's discretion to consider material beyond the pleadings which is submitted with a Rule 12(b)(6) motion.  *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008).  If the court chooses to consider the material, it must generally convert the Rule 12(b)(6) motion into a motion for summary judgment.  *Id.  See Tackett v. M & G Polymers, U.S.A., L.L.C.*, 561 F.3d 478, 487 (6th Cir. 2009).  However, where the court does not rely on such materials, or considers them irrelevant to resolution of the merits of the motion, the court does not err in simply considering the motion as a motion to dismiss.  *Gudenas v. Cervenik*, 2010 WL 987699 at *3 (N.D. Ohio Feb. 22, 2010).

The Court will not consider the "Second Affidavit of Rendelle (Ray) Yzer" in ruling on Plaintiffs' Motion.  This Affidavit is neither attached as an exhibit to Defendants' Answer and Counterclaims, or expressly referred to in that pleading.  While Mr. Yzer's Second Affidavit does arguably relate to matters which are central to the claims at issue in this case, the Court finds consideration of this Affidavit would not be appropriate at this stage of the proceedings.  This is particularly so in light of the fact that Mr. Yzer's Second Affidavit directly contradicts his previously sworn affidavit in several important respects.  Moreover, Defendants do not request that the Court convert Plaintiffs' motion to a summary judgment motion and the Court finds that it would be unproductive to do so as the dispositive motion deadline in this matter is

set to expire later this month.

Accordingly, and for all the reasons set forth above, the Court will not consider the Second Affidavit of Rendelle Yzer in ruling on Plaintiffs' Motion to Dismiss Defendants' Counterclaims pursuant to Rule 12(b)(6).

### III. Analysis

#### *Barratry*

Plaintiffs seek dismissal of Defendants' counterclaim for barratry. Defendants' barratry claim is pled, in its entirety, as follows:

> 25.    The actions complained of herein constitute barratry.
>
> 26.    Plaintiffs lack the requisite legal interest in the claims asserted such that Plaintiffs can legally assert these claims without committing the tort of barratry.
>
> 27.    As a result of the barratry committed by Plaintiffs, Defendants have suffered damages and costs associated with litigation

(Doc. No. 37 at ¶¶ 25-27.)

Plaintiffs argue there is no federal cause of action for barratry and that, in Ohio, "the doctrine of barratry is a rarely used and ancient doctrine." (Doc. No. 38 at 5.) They maintain that only two Ohio cases in the last 100 years have involved barratry, one of which dealt with a maritime insurance contract and the other with the unauthorized practice of law. Plaintiffs argue these cases are distinguishable and bear no relevance to the instant action. Plaintiffs acknowledge that some States, such as South Carolina, define barratry as "frequently exciting and stirring up quarrels." However, Plaintiffs assert that, even if the Court were to adopt this definition, "the allegations made in support of the Barratry cause of action amount to nothing more than conclusory allegations without factual support." *Id.* at 6. Lastly, Plaintiffs refute Defendants' allegation that Plaintiffs "lack the requisite legal interest in" the claims asserted herein, noting both Plaintiffs invested substantial sums of money with Defendant FCI.

In their Brief in Opposition, Defendants cite *Charlton v. Fifth Third Bancorp.*, Case No. 08-cv-703 (S.D. Ohio), in which the district court ordered the plaintiff in a class action suit to show cause why the complaint should not be dismissed because "on review of the pleadings it

8

appears to the Court that the lawsuit was not filed in good faith and that Plaintiff has engaged in conduct amounting to barratry in order to establish grounds to sue." *See Charlton*, Case No. 08-cv-703 (S.D. Ohio) (Order dated September 15, 2009).  Defendants then argue, summarily, that "Plaintiffs' lawsuit was not filed in good faith" and "this court should issue an order in support of the relief sought in Defendants' counterclaims." (Doc. No. 39 at 2.)

The Court finds Defendants have failed to sufficiently allege a plausible claim for barratry.  As an initial matter, Defendants fail to allege whether this claim is intended to state a federal or state law cause of action.  It is not clear to this Court, however, that a private, civil cause of action for barratry exists under either federal or Ohio law.  Indeed, in an unreported decision, the Sixth Circuit found that a district court had properly dismissed a plaintiff's barratry claim "because no private cause of action exists" for such a claim.  *See Casanova v. Byers*, 2003 WL 22089330 at * 2 (6th Cir. Sept. 8, 2003).  Moreover, while some states appear to have passed statutes recognizing a civil cause of action for barratry (*see e.g.* South Dakota Codified Law § 20-9-6.1),[5] Defendants do not direct this Court's attention to any Ohio statute recognizing such a civil claim.  Nor do Defendants direct the Court's attention to any cases in which Ohio courts have recognized barratry as a civil cause of action in the context presented herein.[6]

Based on Defendants' reliance on *Charlton* in their Brief in Opposition, it would appear Defendants are arguing they have properly pled barratry as a federal claim.  In *Charlton,* the plaintiff asserted state and federal claims on behalf of himself and all others similarly situated,

---

[5]  The Court notes, in passing, that a number of states (such as California, New Mexico, Pennsylvania, South Carolina, Virginia and Texas) have declared barratry to be a criminal offense as part of tort reform efforts. *See e.g.*  Ann. Cal. Penal §§ 158, 159; New Mexico Stat. Ann. 1978, § 30-27-3; 18 Pa. C.S.A. § 5109; Code of Laws of South Carolina 1976, §§ 16-17-10, 16-17-20; S.D.C.L. § 22-12-1, Vernon's Texas Statutes and Codes Annotated, Penal Code, § 38.12; VA Code Ann. § 18.2-451, 18.2-452.

[6]  As Plaintiff correctly notes, Ohio courts have discussed the concept of barratry in cases involving maritime insurance contract disputes and cases involving the unauthorized practice of law. *See The Germania Insurance Company v. Thomas Sherlock et al.,* 25 Ohio St. 33 (Ohio 1874); *Ohio State Bar Association v. Heath*, 123 Ohio St.3d 483 (Ohio 2009). However, these cases are obviously distinguishable from the instant matter.

alleging the defendant banks had improperly sorted debit card transactions in descending order in order to increase the number of overdraft fees charged to customers. Defendants moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The district court, however, declined to rule on the motion, noting instead that "on review of the pleadings, it appears to the Court that this lawsuit was not filed in good faith and that Plaintiff has engaged in conduct amounting to barratry in order to establish grounds to sue Fifth Third. Thus, it appears that this lawsuit is an abuse of the judicial process and ought to be dismissed under the unclean hands doctrine" *Id.* at 4.[7] In a footnote, the district court then stated that the term "barratry" has been defined as "the offense of frequently exciting or stirring up quarrels and suits, either at law or otherwise." *See Charlton*, Case No. 08-cv-703 (Order dated September 15, 2009 at 4) (quoting Black's Law Dictionary (6th ed. 1990), at 150.)

The Court notes initially that, although the district court in *Charlton* referenced barratry in its Order, it did not explicitly recognize barratry as a federal cause of action. Rather, it ordered plaintiff to show cause why the complaint should not be dismissed on the basis of the unclean hands doctrine. Thus, it is not altogether clear that *Charlton*, the sole case relied on by Defendants in support of this claim, even supports the proposition that barratry constitutes a federal cause of action.

Even assuming for the sake of argument, however, that barratry does in fact exist as a federal claim, the Court finds Defendants have failed to set forth sufficient factual allegations to state a plausible claim for relief. As noted above, Defendants' sole allegation in support of this counterclaim is that "Plaintiffs lack the requisite legal interest in the claims asserted such that

---

[7] Explaining the basis for its Order, the court noted as follows: "[g]iven the facts that Plaintiff apparently worked in and is a consultant to the banking industry, that he intentionally overdrafted his account, that he purposefully did not make a deposit to cover his overdraft despite evidently having an opportunity to do so, coupled with the fact that Plaintiff checked his account status fourteen times over a four day period, the pleadings suggest that he intentionally structured a series of transactions to call into question the manner in which Fifth Third assesses overdraft fees and to establish a pretext for filing this lawsuit." *Id.* at p. 8.

Plaintiffs can legally assert these claims without committing the tort of barratry." (Doc. No. 37 at ¶ 26.)  The Court finds this claim to be entirely conclusory.  Defendants fail to set forth any factual allegations to support the bald assertion that Plaintiffs "lack the requisite legal interest in the claims asserted."  Moreover, Defendants fail to set forth any factual allegations that appear to relate to the elements of a barratry claim.  Specifically, and presuming that barratry is defined as set forth in *Charlton* (i.e., "frequently exciting or stirring up quarrels and suits, either at law or otherwise"), Defendants do not sufficiently allege that Plaintiffs engaged in any specific activity that constituted "exciting" or "stirring up" a frivolous law suit.

In short, Defendants' counterclaim for barratry is vague, conclusory, and devoid of any supporting factual allegations.  The Court finds Defendants failed to sufficiently plead a plausible claim for barratry and, therefore, Plaintiffs' motion to dismiss this claim is granted.

### *Civil Conspiracy*

Plaintiffs next seek dismissal of Defendants' civil conspiracy claim. This claim is pled, in its entirety, as follows:

> 28.  Plaintiffs and others to be identified in discovery engaged in civil conspiracy in this matter.
>
> 29.  As a result of the civil conspiracy committed by Plaintiff and others, Defendants have suffered special damages herein complained of.

(Doc. No. 37 at ¶¶ 28, 29.)

Plaintiffs maintain that "[t]his cause of action provides the most egregious example of a pleading littered with vague allusions, logical/legal conclusions and baseless allegations."  (Doc. No. 38 at 11.)  They argue Defendants have failed entirely to plead the elements of a civil conspiracy claim under Ohio law and, therefore, it should be dismissed.

Defendants argue that this claim is properly pled because "the facts speak for themselves." (Doc. No. 39 at 4.)  Citing both federal and Ohio law, Defendants maintain they have adequately pled the elements of a civil conspiracy claim because (1) "the single plan is evidenced by Plaintiffs' single complaint;" (2) "the single complaint is evidence of the Plaintiffs sharing of a 'general conspiratorial objective,'" and, (3) "the overt act of filing the subject

11

complaint against Defendants, in bad faith, is the 'furtherance of the conspiracy.'" *Id.*

In their Counterclaims, Defendants do not indicate whether their civil conspiracy claim is asserted under state or federal law. Defendants appear to indicate in their Brief in Opposition that this claim is asserted under both, as they recite the elements of this cause of action under both Ohio and federal authority. The Court finds that, whether asserted as a state or federal claim, Defendants have not stated a valid claim for relief.

Under Ohio law, a claim for civil conspiracy requires "'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Burgess v. Fischer*, 735 F.3d 462, 483 (6th Cir. 2013) (quoting *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 650 N.E.2d 863, 866 (1995)). *See also B & S Transport, Inc. v. Bridgestone Americas Tire Operations, LLC.*, 2014 WL 3687777 at * 3 (N.D. Ohio July 24, 2014). Moreover, "[a] civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy." *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 915 N.E.2d 696, 711–12 (2009).

Here, in addition to being conclusory and devoid of any supporting factual allegations whatsoever, Defendants' counterclaim fails entirely to plead either malice or "an underlying tort that is actionable without the conspiracy." Thus, to the extent Defendants intended to assert their civil conspiracy claim under Ohio law, the Court finds Defendants failed to sufficiently plead a plausible claim for relief.

Under federal law, " 'a civil conspiracy is an agreement between two or more persons to injure another by unlawful action.... All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.' " *Huffer v. Bogen*, 503 F. App'x 455, 461 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 934–44 (6th Cir. 1985)). Conspiracy claims "must be pled with some degree of specificity" and merely describing the acts taken by various individual defendants does not suffice. *Id.* at 461–62 (citation and quotation marks omitted).

In the instant case, Defendants fail to plead either a single plan; a general conspiratorial objective; or, any specific overt act committed in furtherance of the alleged conspiracy.  Rather, Defendants' claim sets forth nothing more than vague and conclusory allegations, failing even to describe the actions of the individual Plaintiffs relative to the conspiracy claim.

As noted, above, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss under Rule 12(b)(6). *Iqbal*, 129 S.Ct. at 1950.  Defendants herein fail to even plead the elements of a civil conspiracy claim, either under Ohio or federal law, much less support those elements with factual allegations sufficient to state a plausible claim for relief.  Whether asserted as a state or federal claim, Defendants' civil conspiracy claim is entirely insufficient to withstand dismissal under Rule 12(b)(6).

Perhaps acknowledging the deficiencies in their pleading, Defendants state that "[i]f. . . for some reason, the Court concludes that the current allegations are not sufficient, the Defendants respectfully request that rather than granting Plaintiffs' motion, the Court give Defendants leave to amend this Count to add more specific allegations of Plaintiffs' civil conspiracy." (Doc. No. 39 at 4.)  Defendants maintain leave to amend should be granted under Fed. R. Civ. P. 15(a)(2)[8] because it is still a "very early stage in the proceeding" and Plaintiffs would not be prejudiced by allowing Defendants to amend.

Defendants' request for leave to amend is denied.  Notwithstanding Defendants' suggestion to the contrary, it is not a "very early stage" in the instant proceedings.  In fact, this action was filed over a year and a half ago; the discovery deadline expired on May 27, 2015; and, the dispositive motion deadline is set to expire later this month, on June 29, 2015.  (Doc. No. 35.)  Defendants have not set forth any reasonable basis for allowing them to amend their

---

[8]  Factors that may affect the determination of whether to allow a party to amend its pleading under Rule 15(a)(2) include undue delay in filing; lack of notice to the opposing party; bad faith by the moving party; repeated failure to cure deficiencies by previous amendment; undue prejudice to the opposing party; and, futility of the amendment. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001).  *See also Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010).

Counterclaims at this late date.  Moreover, as Plaintiffs correctly note, Plaintiffs challenged the sufficiency of Defendants' original civil conspiracy Counterclaim (Doc. No. 15) in their previously filed Motion to Dismiss (Doc. No. 21), raising the very same arguments as in the instant motion.  After Plaintiffs filed their Second Amended Complaint (and their previously filed motion to dismiss counterclaims was denied as moot), Defendants asserted the same Counterclaims using identical language as that set forth earlier.  Although put on notice of Plaintiffs' arguments regarding the sufficiency of Defendants' civil conspiracy claim, Defendants made no effort to plead this claim with any greater degree of specificity.  Defendants offer this Court no reason to allow them to do so now.

Accordingly, Defendants will not be granted leave to amend their civil conspiracy counterclaim.  Plaintiffs' motion to dismiss this claim is granted.

### Abuse of Process

Plaintiffs next seek dismissal of Defendants' abuse of process counterclaim. That claim is pled as follows:

> 22.  Plaintiffs' entire business model is predicated on maximizing financial returns for themselves and their clients, filing lawsuits like this one, and extorting settlements from defendants of same. Without the revenue from these settling defendants, Plaintiffs' business model is substantially hampered.
>
> 23.  Plaintiffs are unable to support their claims against defendants as evidenced by its abandonment of its NFA arbitration claim upon NFA's request for substantiation of same.
>
> 24.  Instead of responding to the NFA's request for more information supporting their claim, Plaintiffs have instead chosen to file their Complaint with this Court with the hope of finding a more lenient trier of fact. Plaintiffs' transparent attempt to recoup its financial losses after knowingly taking risks relating to same is improper, willful and frivolous.  Defendants never offered Plaintiffs a guaranteed return on their investment.  This Court should refuse to grant Plaintiffs same.

(Doc. No. 37 at ¶¶ 22-24.)

Plaintiffs argue this claim should be dismissed because "[n]one of [the above allegations] can be said to embody any form of pleading that rises above the level of 'possibility' to the level of 'plausibility.'"  (Doc. No. 38 at 9.)  They assert Defendants have failed to sufficiently plead

14

the elements of an abuse of process claim under Ohio law, including that the instant lawsuit was "perverted to attempt to accomplish an ulterior purpose for which it was not designed." *Id*. at 10. Lastly, Plaintiffs maintain this claim is "nothing more than a rehashing of the previous arguments where Defendants improperly asked the Court to transfer the matter to the NFA and in no way can be construed to have met the pleading burden of Civil Rule 8." *Id*. at 11.

In the Brief in Opposition, it is argued only that "Defendants have alleged that the instant lawsuit was commenced with the intent to extort a nuisance value settlement from Defendants." (Doc. No. 39 at 4.)

Under Ohio law,[9] the elements of a claim for abuse of process are: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) direct damage has resulted from the wrongful use of process." *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 676 (6th Cir. 2005) (quoting *Yaklevich v. Kemp, Schaeffer, & Rowe Co. et al.*, 68 Ohio St.3d 294, 626 N.E.2d 115, 116 (Ohio 1994)).  As the Ohio Supreme Court has explained, "abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order."  *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264, 271, 662 N.E.2d 9 (1996).  Thus, "there is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id*. at 118 n. 2 (citing Prosser & Keeton, *supra*, at 898).  In an abuse of process case, "[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Robb,* 75 Ohio St.3d at 271.

---

[9]  Once again, it is unclear from the pleadings whether Defendants intended to assert this claim as a federal or state law cause of action.  In their Motion to Dismiss, Plaintiffs assume Defendants asserted their abuse of process claim under state law.  Defendants do not dispute this characterization in their Brief in Opposition, nor do they direct this Court's attention to any authority suggesting that the Sixth Circuit recognizes abuse of process as a federal claim.

15

The Court finds Defendants have failed to sufficiently allege abuse of process. Defendants have made no allegation that the instant lawsuit has been perverted in order to accomplish an ulterior purpose beyond what is properly involved in the proceeding itself.  In other words, Defendants have not alleged that Plaintiffs have used the instant lawsuit in order to obtain an improper collateral advantage or to satisfy some purpose not addressed by the instant action.  Rather, Defendants allege that (1) Plaintiffs' claims are "improper, willful and frivolous" because Defendants "never offered Plaintiffs a guaranteed return on their investment;" and (2) Plaintiffs are attempting to "extort" a settlement based on their allegedly meritless claims.  (Doc. No. 37 at ¶ 24.)  However, Ohio case law makes clear that Defendants herein do not sufficiently allege an ulterior motive for purposes of an abuse of process claim.  As one Ohio court explained:

> {¶ 35} In determining whether "an ulterior motive" element is satisfied, the critical inquiry is whether the plaintiff is using the court proceeding to obtain a benefit or remedy against the defendant "that which the court is itself powerless to order in the proceeding." *Robb* at 271.  For example, in *Robb*, the Ohio Supreme Court found that the plaintiffs' filing of lawsuits against a yachting club to coerce members to vote in their favor could be construed as proof of an ulterior motive to overcome summary judgment.  *Id.*  In reaching this conclusion, the court recognized that there was proof that the underlying lawsuit was being used to accomplish a purpose that the trial court had no authority to grant.  As stated by the court, "Clearly, the trial court had no authority to order club members how to vote."  *Id.*

> {¶ 36} Thus, the ulterior motive contemplated by an abuse of process claim generally involves an attempt to gain an advantage outside the proceeding, using the process itself as the threat. *Wolfe [v. Little*, (April 27, 2001), 2nd Dist. No. 18718] (noting typical ulterior purposes as "extortion of money, prevention of a conveyance, compelling someone to give up possession of something of value, when these things were not the purpose of the suit").

> {¶ 37} Conversely, abuse of process does not occur when a party uses the court to pursue a legal remedy that the court is empowered to give. *Ruggerio [v. Kavlich*, 8th Dist. No. 92909, 2010-Ohio-3995]; *Havens–Tobias v. Eagle*, 2d Dist. No. 19562, 2003–Ohio–1561.  And the mere fact that the claim is determined to be without merit does not give rise to an abuse of process claim. *Ruggerio* at ¶ 39–40.

> {¶ 38} Further, while the Estate argues that Sivinski's pursuit of his claims, which it contends were meritless and made in bad faith, is enough to satisfy the second element of an abuse of process claim, this court has consistently rejected such an argument.  *See, e.g., Tilberry v. McIntyre* (1999), 135 Ohio App.3d 229, 733 N.E.2d 636; *Ruggerio, supra; Kavlich v. Hildebrand*, 8th Dist. No. 91489, 2009–Ohio–1090.  Indeed, "[i]t is well-settled * * * that a

16

> threat to pursue a civil action, even if the action would be entirely frivolous or brought in bad faith, does not constitute extortion." *Tilberry* at 241.  Finally, "there is no liability for abuse of process where defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Yaklevich* at 298, 626 N.E.2d 115.

*Sivinski v. Kelley*, 2011 WL 1744262 at * 6 (Ohio App. 8th Dist. May 5, 2011).

While Defendants in the instant case clearly believe Plaintiffs' claims are meritless, this is not sufficient to satisfy the second element of an abuse of process claim under Ohio law.  *See also West Bend Mutual Ins. Co. v. Westfield Insurance Group*, 2013 WL 5467821 at * 4 (S.D. Ohio Sept. 30, 2013) ("The mere fact that [a] claim is determined to be without merit does not suffice to sustain an abuse of process claim").  Because no collateral or ulterior purpose has been alleged, Defendants' abuse of process claim is untenable.

As with their civil conspiracy claim, Defendants request that the Court grant them leave to amend their abuse of process claim rather than dismiss it for failure to state a claim.  (Doc. No. 39 at 4.)  The Court denies this request for the reasons set forth *supra*, in connection with Defendants' civil conspiracy claim.

Accordingly, and for all the reasons set forth above, Plaintiffs' motion to dismiss Defendants' abuse of process counterclaim is granted.

### *Declaratory Judgment*

Finally, Plaintiffs seek dismissal of Defendants' declaratory judgment counterclaim.  That claim is pled as follows:

> 19.    Plaintiffs have alleged that Defendants willfully misrepresented the cause of the loss in investment value of FCI's Credit Premium Program ("CPP"), the nature of the CPP trading program, and the existence of change in the CPP trading methodology.

> 20.    Defendants did not misrepresent the cause of the loss in investment value of FCI's Credit Premium Program ("CPP"), the nature of the CPP trading program, and the existence of change in the CPP trading methodology.

> 21.    Defendants are entitled to a declaration that Defendants did not make any misrepresentations to Plaintiffs.

(Doc. No. 37 at ¶¶ 19-21.)

Plaintiffs argue this claim should be dismissed because "it is clear that what [Defendants]

17

are requesting is a ruling on the merits of Plaintiffs' suit in their favor" and "[t]his request is in no way proper under the declaratory judgment standard." (Doc. No. 38 at 7.)  Plaintiffs further maintain Defendants' request for declaratory judgment is moot because the parties do not have an ongoing relationship and there is no "existing, valid, living and controlling document to define."  *Id*. at 8.

Defendants maintain that "the standard by which Defendants must be judged is that contained within the written contract between Plaintiffs and Defendants, i.e., the Investment Management Agreement dated March 10, 2010 (Attached #2 to Plaintiffs' Amended Complaint)."  (Doc. No. 39 at 3.)  Defendants assert it is appropriate to ask the Court to render a declaratory judgment regarding the parties' contractual obligations under this Agreement with respect to any alleged changes made to the CPP trading methodology.  They further maintain declaratory relief is warranted because "by way of signing disclosure documents, Plaintiffs have already indemnified Defendants."  *Id*.  Finally, Defendants argue that "[g]iven th[e] obvious disparity between Plaintiffs' Complaint and Defendants' contractual obligations, declaratory relief is necessary at this stage of the instant lawsuit."  *Id.*

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201 (emphasis added). According to the Supreme Court, the Act vests federal courts with "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).  In other words, Congress "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Id*. at 288. District courts are afforded such discretion "because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of the case for resolution, are peculiarly within their grasp."  *Id*. at 289.

In determining whether to exercise this discretion, the Sixth Circuit has directed district

18

courts to focus on the following five factors:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for *res judicata*;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction;[10] and,

(5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir.1984).  *See also Scottsdale Insurance Company v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008); *Liberty Mutual Fire Ins. Co. v. Bohms*, 2012 WL 3038173 at * 3 (6th Cir. July 26, 2012).

These factors "direct the district court to consider three things: efficiency, fairness, and federalism." *Western World Insurance Company v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).  As the Sixth Circuit has explained, "[t]he relative weight of the underlying considerations of

_____

[10]  The Sixth Circuit later explained that the fourth factor should be determined by asking the following: (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and, (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action. *Scottsdale Insurance Company v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008).  The Court notes, although the issue of whether to dismiss declaratory judgment actions often arises in the context of ongoing, parallel federal and state actions, the *Grand Truck* factors are also applied in cases where no such state action has been filed.  *See Clifford v. Church Mutual Ins. Co.*, 2014 WL 4805473 at * 2 (S.D. Ohio Sept. 26, 2014) (noting that "[n]othing in *Grand Trunk* or its progeny hold that the factors are only applicable when there is a parallel action in state court").  *See also Foundation for Interior Design Education Research v. Savannah College of Art & Design*, 244 F.3d 521, 526-527 (6th Cir. 2001) (applying *Grand Trunk* factors although no state court proceedings relating to the case were pending); *Gervasi v. Warner/Chappell Music, Inc.*, 2014 WL 3798189 at * 38 (M.D. Tenn. Jan. 30, 2014) (same); *Goad v. Lewis*, 2014 WL 5498935 at * 5-7 (M.D. Tenn. Oct. 30, 2014) (same); *Younglove Construction, LLC v. PSD Development, LLC*, 2010 WL 3515603 (N.D. Ohio Sept. 3, 2010) (same).

efficiency, fairness, and federalism will depend on the facts of the case." *Id*.  Overall, "[t]he essential question is always whether a district court has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair."[11]  *Id*.

For the following reasons, the Court declines to exercise jurisdiction over Defendants' claim for declaratory judgment.  The first factor (i.e., whether the declaratory action would settle the controversy) weighs against allowing Defendants' claim to proceed.  As pled, Defendants' claim relates solely to the issue of whether FCI made any misrepresentations with regard to the CPP trading program and/or the CPP trading methodology.  However, even if the Court were ultimately to grant judgment in Defendants' favor with respect to this issue, Plaintiffs' fraud and breach of fiduciary duty claims are also premised on the assertion that Defendants intentionally misrepresented FCI's corporate status and its relationship to Defendant FII.  Accordingly, as resolution of Defendants' claim would not resolve the underlying controversy, this factor weighs against exercising jurisdiction.

With respect to the second factor (i.e., whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue), the Court similarly finds it does not weigh in Defendants' favor.  The Court must fully consider and resolve the issue of whether FCI made a material change to the CPP trading methodology in the course of adjudicating Plaintiffs' fraud and breach of fiduciary duty claims.  Thus, as the Court will be addressing this issue in the context of Plaintiffs' claims, Defendants' declaratory judgment claim serves little useful purpose in clarifying the legal issues in this matter.[12]

---

[11] The Court notes that neither party cited the *Grand Trunk* factors or applied them to the instant case.  However, the Sixth Circuit has explained that "we have found reversible error when a district court fails to apply these factors."  *U.S. Fire Ins. Co. v. Albex Aluminum,Inc*., 161 Fed. Appx. 562, 564 (6th Cir. 2006) (citing *AmSouth Bank v. Dale*, 386 F.3d 763, 785 (6th Cir. 2004)).  Thus, although not expressly argued by the parties herein, the Court will consider and apply the above factors.

[12] Moreover, it is the Court's understanding that there is no ongoing contract between the parties. At least one court has held that "situations where 'some uncertainty beyond the possibility of litigation exists' weigh in favor of permitting declaratory relief under the

The third and fourth factors do not appear to be applicable herein, as there is no threatened or pending ongoing, parallel state court action.[13]  *See Younglove Construction, L.L.C. v. PSD Development, L.L.C.*, 2010 WL 3515603 at * 9 (N.D. Ohio Sept. 3, 2010) (stating that "[t]he third factor is inapplicable and does not affect my balancing, because here there exists no "race for *res judicata*" that typically exists where two parties seek alternative state and federal determinations of an issue" and "the fourth factor is inapplicable herein"); *Clifford v. Church Mut. Ins. Co.*, 2014 WL 4805473 at * 3 (S.D. Ohio Sept. 26, 2014) (noting that the parties agree "there is no procedural fencing or race for *res judicata* issue in this case because there is no ongoing state court case.")

The fifth factor weighs against Defendants as "there is an alternative remedy [that may] . . . more effective[ly] resolve" this issue: allowing the parties to address whether Defendants misrepresented CPP's trading methodology through the normal course of this litigation; i.e., discovery and motion practice regarding Plaintiffs' claims and Defendants' defenses.  *See Younglove Construction, L.L.C.*, 2010 WL 355603 at * 9.

Accordingly, and for all the above reasons, Defendants' declaratory judgment claim is dismissed.

---

second factor, whereas 'those where the injury is already complete' weigh against allowing it." *Gervasi v. Warner/Chappell Music, Inc.*, 2014 WL 348189, at *7 (M.D. Tenn. Jan.30, 2014) (citation omitted).  Thus, where the "purported injury is already complete," this factor has been found to weigh heavily against the court exercising jurisdiction. *See also Goad v.  Lewis*, 2014 WL 5498935 at * 6 (M.D. Tenn. Oct. 30, 2014).

[13] In this regard, the Court notes that there is no pending NFA arbitration action related to this matter either.  Indeed, the Court rejected Defendants' attempt to transfer this action to the NFA for arbitration in its Opinion & Order dated July 22, 2014 (Doc. No. 14 at 10-2.)

### IV.  Conclusion

For the reasons set forth above, Plaintiffs' Motion to Dismiss Counterclaims for Failure to State a Claim upon which Relief may be Granted (Doc. No. 38) is GRANTED.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: June 15, 2015