**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES EMERMAN, *et al.*, | ) | CASE NO. 1:13cv2546 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| FINANCIAL COMMODITY | ) | |
| INVESTMENTS, L.L.C., *et al.*, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendants. | | |

Pending before the Court[1] is Defendants Financial Commodity Investments, L.L.C., Financial Investments, Inc., and Craig B. Kendall's (1) Motion to Compel Discovery (Doc. No. 48); (2) Motion in *Limine* to Exclude Plaintiffs' Expert Witness (Doc. No. 51); and, (3) "Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted Pursuant to FRCP 12(B)(6) and FRCP 37(b)(2)(A)."  (Doc. No. 52.)

For the following reasons, Defendants' Motion to Dismiss (Doc. No. 52) is DENIED, and Defendants' Motion in *Limine* (Doc. No. 51) is GRANTED as set forth herein.  Defendants' Motion to Compel (Doc. No. 48) is DENIED AS MOOT.

## I.     Procedural Background

Plaintiffs Charles Emerman and the Sidney Fund LP ("Plaintiffs") filed a Complaint

---

[1]This matter is before the Court upon consent of the parties entered August 28, 2014. (Doc. No. 19.)

against Defendants Craig B. Kendall and Financial Commodity Investments, L.L.C. ("FCI") on November 18, 2013, alleging (1) fraud and misrepresentation in violation of 7 U.S.C. § 60; and, (2) fraud in the inducement in violation of 7 U.S.C. § 6(b). (Doc. No. 1.) Plaintiffs filed a First Amended Complaint on March 14, 2014, which added claims for breach of fiduciary duty under Virginia and Ohio common law. (Doc. No. 3.)

In their First Amended Complaint, Plaintiffs allege Defendant Kendall is the sole owner of FCI, a commodity trading advisor. (Doc. No. 3 at ¶¶ 4, 7.) One product offered by FCI was a Credit Premium Program ("CPP"), which was advertised as a discretionary trading program. *Id*. at ¶¶ 12, 16. In September 2009, FCI published a Due Diligence Questionnaire regarding the CPP, which allegedly represented that the trading method of the CPP would be a trader-driven discretionary trading model directed by FCI employee Gaurev Gupta. *Id.* at ¶¶17, 19-21.

Around December of 2010, Plaintiffs made a $100,000 investment in the CPP based upon disclosures contained in the Questionnaire and other representations made by agents and employees of FCI. *Id*. at ¶¶ 21-22. On May 1, 2011, FCI issued a Disclosure Document in which it notified clients that they would be informed of any changes in FCI's trading approach that FCI considered to be material. *Id*. at ¶¶ 24, 30. On August 2, 2011, Plaintiff Sidney Fund invested $150,000 in the CPP. *Id*. at ¶ 31. In that same month, FCI allegedly switched from the trader-driven discretionary model to a systematic computer-based trading model. *Id*. at ¶¶ 32, 33. Plaintiffs allege FCI failed to make Plaintiffs aware of this change. *Id*. at ¶ 34. After this change, Plaintiffs began to suffer significant investment losses in the CPP. *Id.* at ¶ 35. When inquiries were made, Defendants allegedly reported it was a "bad market" and "there were no other internal explanations for the losses." *Id.* at ¶ 37. Plaintiffs claim they did not become aware of the change in the trading methodology until after April 2012. *Id*. at ¶ 39. Upon being informed about this change, Plaintiffs withdrew their remaining investment funds from the control of FCI, allegedly suffering a substantial loss. *Id.* at ¶ 40.

Defendants subsequently filed an Answer and Counterclaims on August 5, 2014. (Doc. No. 15.) Therein, Defendants claimed that "at all times relevant to this matter, FCI's Credit

2

Premium Program ("CPP") has been a trader-driven discretionary trading model" and "at no time during the life of CPP did FCI or Craig B. Kendall move to a systematic computer-based trading model." *Id.* at ¶¶ 5, 6.  As Counterclaims, Defendants asserted the following causes of action: (1) declaratory judgment; (2) abuse of process; (3) barratry; and, (4) civil conspiracy.  (Doc. No. 15 at pp. 2-3.)

A Case Management Conference was conducted on September 16, 2014.  (Doc. No. 24.) At that time, the parties indicated they had already exchanged their initial disclosures.  *Id.* at 1. The Court set a non-expert discovery deadline of February 27, 2015 and a dispositive motion deadline of April 27, 2015.  *Id.* at 2.  With regard to expert discovery, the CMC Order provided as follows:

> The parties do not anticipate the need for expert testimony at this time. However, after the close of non-expert discovery, the parties will have the opportunity to re-evaluate the need for expert testimony.

*Id.*  The CMC Order also expressly provided that:

> **The parties are reminded of their obligations under Fed. R. Civ. P. 26, as amended. No witness or exhibit will be permitted unless provided to opposing counsel in accordance with Fed. R. Civ. P. 26.**

*Id.* at 1 (emphasis in original).  A settlement conference was scheduled for January 8, 2015. (Doc. No. 25.)

Three days prior to the settlement conference, on January 5, 2015, Plaintiffs filed a Motion for Leave to Amend Complaint (Doc. No. 27.)  Therein, Plaintiffs sought leave to add Financial Investments, Inc. ("FII") as a Defendant and add additional causes of action "to encompass the actions of said new Defendant."  *Id.* at 1.  Specifically, Plaintiffs alleged FII is also owned by Defendant Kendall and "was the actual entity with which Plaintiffs were transacting business during all times pertinent to the Complaint."  *Id.*  Plaintiffs alleged Defendant FCI did not exist as a corporate entity and, instead, FII was the "only legal entity in existence during the time period at issue in this matter."  *Id.* at 5.  Plaintiffs asserted Defendants "either negligently or

affirmatively" hid this information from potential investors.[2]  *Id.*

On January 27, 2015, the Court issued an Opinion & Order granting Plaintiffs' Motion for Leave to Amend the Complaint.  (Doc. No. 33.)  Plaintiffs filed their Second Amended Complaint several weeks later, on February 13, 2015.  (Doc. No. 34.)  Therein, Plaintiffs restate their allegations regarding FCI's alleged change from a trader-driven discretionary trading model to a computerized trading model.  *Id.* at ¶¶ 46-67.  In addition, the Second Amended Complaint adds FII as a Defendant, and alleges it is a Virginia corporation "whose sole owner, on information and belief, is Defendant Kendall as its 'control person.'"  *Id.* at ¶ 5.  The Complaint then sets forth detailed allegations regarding FII's and FCI's corporate histories, as well as a series of allegations regarding regulatory enforcement proceedings initiated by the Commodities Futures Trading Commission ("CFTC") against FII (as a result of which a $130,000 fine was allegedly imposed as well as a permanent injunction allowing for monitoring of FII's compliance with CFTC reporting regulations).  *Id.* at 8-28.  Plaintiffs allege that "FCI was a fictitious name used deceptively by FII for the advertisement of their commodities investment programs, including, but not limited to the Defendants' so-called Credit Premium Program."  *Id.* at ¶ 10.  Plaintiffs maintain Defendants failed to disclose this fact or the fact that FII had a history of regulatory enforcement proceedings and violations.

Based on the above allegations, the Second Amended Complaint asserts claims for (1) fraud and misrepresentation in violation of 7 U.S.C. § 60; (2) fraud in the inducement in violation of 7 U.S.C. § 6(b); (3) breach of fiduciary duty under Virginia common law; and, (4) breach of fiduciary duty under Ohio common law.  (Doc. No. 34.)

Meanwhile, on February 12, 2015, the Court conducted a telephonic status conference with counsel.  At that time, the Court extended the discovery deadline to May 27, 2015 and the

---

[2]  Plaintiffs also filed a  Motion to Continue Mediation.  (Doc. No. 28.)  The basis for Plaintiffs' motion was "the newly discovered information tending to prove that a currently unnamed third party, Financial Investments Inc. was both the real party in interest and real party responsible for the actions complained of in the original complaint."  *Id.*  Plaintiffs' motion to continue was granted on January 6, 2015.

4

dispositive motions deadline to June 29, 2015. (Doc. No. 35.) At no time during this conference did Plaintiffs identify an expert witness or express the need for expert discovery deadlines.

Shortly thereafter, Defendants filed their Answer to the Second Amended Complaint and Counterclaims. (Doc. No. 37.) Therein, Defendants again asserted that, at all times relevant to the instant action, the "CPP has been a trader-driven discretionary trading model" and "at no time during the life of the CPP did FCI or Craig B. Kendall move to a systematic computer-based trading model." *Id.* at ¶¶ 14-15. With respect to Plaintiffs' allegations regarding FII, Defendants alleged "FII was in no way involved with Plaintiffs or any of the transactions or occurrences that are the subject of Plaintiffs' Amended Complaint." *Id.* at ¶ 6. Defendants asserted the same four Counterclaims: (1) declaratory judgment; (2) abuse of process; (3) barratry; and, (4) civil conspiracy. (Doc. No. 37.)

On March 11, 2015, Plaintiffs filed a Motion to Dismiss Counterclaims for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6). (Doc. No. 38.) Defendants filed a Brief in Opposition on March 27, 2015 (Doc. No. 39), to which Plaintiffs did not reply. The Court thereafter issued an Opinion & Order granting Plaintiffs' Motion to Dismiss Defendants' Counterclaims. (Doc. No. 43.)

A settlement conference was conducted with counsel and clients on May 5, 2015; however, the parties were unable to reach an agreement.[3] (Doc. No. 41.) The Court reminded counsel that the discovery deadline would expire on May 27, 2015. (Doc. No. 41.) Plaintiffs did not identify an accountant as an expert witness at this time, or otherwise express the need to conduct expert discovery.

Subsequently, on July 21, 2015, the Court conducted a telephonic status conference with counsel. (Doc. No. 44.) At that time, the Court noted that the discovery and dispositive motions deadlines had passed, with no dispositive motions having been filed. *Id.* Counsel indicated further settlement discussions would not be productive and agreed the matter should be set for

---

[3] The Court notes that, during mediation proceedings, Plaintiffs relied on a damages spreadsheet that was not self- explanatory.

bench trial.  *Id.*  A Final Pretrial was set for November 24, 2015 (which was later changed to

November 19, 2015), with Trial set to begin on December 8, 2015.  *Id.*   Finally, the Court's

Minute Order, issued following the conference, reflected the following:

> Plaintiffs' counsel indicated that their accountant was in the process of preparing a report relating to Plaintiffs' alleged damages.  Plaintiffs shall produce the accountants' report to Defendants by no later than Friday, August 21, 2015.  In the event Defendants wish to depose Plaintiffs' accountant, Plaintiffs shall make him/her available and cooperate in scheduling such deposition.

(Doc. No. 44.)  Plaintiffs did not identify their accountant as an expert witness during this

conference, or characterize the report referenced above as an "expert report."

On August 25, 2015, Defendants filed the instant Motion to Compel.  (Doc. No. 48.)

Therein, Defendants argued, in relevant part, as follows:

> . . . Plaintiffs . . . were committed to producing a more detailed accounting report no later than this past Friday, August 21st.  That report was never produced.  At 4pm that afternoon, Plaintiffs counsel phoned Defendants counsel explaining that they were not going to be able to meet this court-ordered deadline for same and that they need more time. [Plaintiffs'] counsel further explained that there will be no changes to their damages calculation.  This, of course, begs the question as to why they were unable to prepare their report/explanation of their calculations within the three month period that they had requested.  Any delay in producing this report is highly prejudicial against Defendants as it greatly inhibits their ability to properly prepare their defense in this matter.

*Id.* at 1.

Plaintiffs filed a Brief in Opposition on September 11, 2015.  (Doc. No. 49.)  Therein,

Plaintiffs argue as follows:

> On July 21, 2015, Counsel for Plaintiff contacted Defendant's Counsel, informing them that the report produced as part of the initial discovery, and made part of their Statement of Damages for mediation, would in fact be the accounting report used at trial.  They were also provided with the name of the party who prepared the report, Joseph Maza, and the name and location of the company responsible for the report, Compliance Supervisors International, Inc. in New Jersey.  Counsel was further informed that while the report would not change, as far as values, that in order to provide full disclosure, **a detailed explanation of the source of the data, methodology used in calculating the values, and meaning of the values would also be forthcoming.**
>
> With regards to the report, it was explained that due to the use of three different accounting / monitoring firms by the general partner of Sydney Fund, LP, there was some initial confusion as to the source of the report, which had caused the delay.  Therefore, as of August 21, 2015, Plaintiff had in fact complied with the order of this court, in that they identified the report, already in Defendants' possession, as the accountant report to be used at trial.

6

*Id*. at 1-2 (emphasis added).  Plaintiffs claim that "[t]he report, in Defendants' possession prior to the mediation, has been produced" and argue that "Defendants will have ample opportunity to cross examine the witness on the source of the data, methodology, and reliability and meaning of the report's results."  *Id*. at 2-3.

On September 30, 2015, the Court conducted a telephone conference with counsel regarding Defendants' Motion.  (Doc. No. 50.)  During that conference, Plaintiffs advised the Court, for the first time, that Plaintiffs intended to call an accountant as an expert witness at trial. *Id*.  Plaintiffs' counsel also indicated that Plaintiffs had not yet completed the final version of the accountant's damages report, despite the fact that the Court had ordered it to be produced by no later than August 21, 2015.  *Id*.  The Court expressed concern that Plaintiffs had failed to either timely identify an expert witness or disclose the expert report ninety (90) days prior to trial, as required by Fed. R. Civ. P. 26(a)(2)(D); and, advised Plaintiffs to disclose their expert report as soon as possible.  *Id*.

On October 2, 2015, Defendants filed a Motion *in Limine*, seeking to exclude both the testimony and work product of Plaintiffs' accountant expert witness.  (Doc. No. 51.)  Plaintiffs failed to file a timely Brief in Opposition.  Moreover, in an email to the Court dated October 22, 2015, Plaintiffs' counsel expressly stated that "[w]ith regard to the motion to exclude the expert witness, we have chosen not to challenge it and [will] let the documents speak for themselves."

On October 20, 2015, Defendants filed a "Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted Pursuant to FRCP 12(B)(6) and FRCP 37(b)(2)(A)."  (Doc. No. 52.)  Plaintiffs filed a Brief in Opposition on October 28, 2015, to which Defendants replied on October 29, 2015.  (Doc. Nos. 53, 54.)

## II.    <u>Discussion</u>

Defendants argue this action should be dismissed under Rule 37[4] in light of Plaintiffs'

---

[4] Defendants also argue that Plaintiffs' Second Amended Complaint should be dismissed under Rule 12(b)(6) because "Plaintiffs have failed to identify with particularity the damages that they have suffered as a result of Defendants' actions."  (Doc. No. 52 at 1.) The Court finds dismissal is not appropriate under Rule 12(b)(6).  Rule12(b) provides

"continuing failure to provide the expert report" prepared by their accountant regarding damages. (Doc. No. 52 at 4.) Defendants maintain Plaintiffs' failure to produce this report "can only be characterized as a willful, bad faith failure to participate in the discovery process." *Id.* Defendants assert they are prejudiced by Plaintiffs' failure to disclose because they will be "unable to adequately prepare for trial without" the opportunity to review Plaintiffs' accountant expert report. *Id.* They claim Plaintiffs were given ample notice that their failure to produce the expert report could result in dismissal, emphasizing that this Court's August 28, 2014 CMC Scheduling Order expressly provided that "all disclosures mandated by Fed. R. Civ. P. 26(a) shall apply, including Initial Disclosures (Fed. R. Civ. P. 26(a)(1)), Disclosure of Expert Testimony (Fed. R. Civ. P. 26(a)(2)), and Pretrial Disclosures (Fed. R. Civ. P. 26(a)(3))." (Doc. No. 20 at 3.) Finally, Defendants argue against the imposition of less drastic sanctions, asserting that "Plaintiffs' filing history and their willful indifference to the discovery process establish that the dismissal of their claim is an appropriate sanction under the circumstances." (Doc. No. 52 at 5.)

Plaintiffs argue that the extreme sanction of dismissal is not warranted. They claim that, in fact, no expert report is necessary because "the information Plaintiffs will use to prove their damages is based entirely on monthly performance data for Defendants' own funds, and the documented investments/withdraws of each Plaintiff." (Doc. No. 53 at 2.) As such, Plaintiffs assert, "Defendants should have no issue, using document and information in their possession, to determine what the damage calculation should be." *Id.* at 3. Plaintiffs further articulate their argument as follows:

> As stated above, the accountant's report is not necessary for Plaintiffs to prove damages. Furthermore, the Court issued an order that an expanded accountant's report must be provided. However, as explained in the response to the motion to compel, Plaintiffs' have determined that the report was accurate, and have made the further determination that the report is not necessary. As stated above, using simple monthly statements, and simple math, Plaintiffs are able to prove their

---

that "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." Here, Defendants' filed their Answer to Plaintiffs' Second Amended Complaint on February 18, 2015. (Doc. No. 37.) Moreover, the Court notes the dispositive motions deadline in this matter expired on June 29, 2015. Thus, dismissal under Rule 12(b)(6) is untimely and improper at this stage in the litigation.

damages. This information was not only provided, but are Defendants own financial returns on their investment product. For Defendants to claim that they cannot ascertain their damages when the claimed damages are the losses resulting from the change in the trading program in August of 2011 though Plaintiffs withdraw of funds in April of 2012 is absolutely nonsensical. The monthly statements, combined with the documents showing each parties investment, are all documents either generated by and or in the possession of Defendants before this lawsuit was even originated. Defendants know, or at least should know, what their monthly returns are and what the values of accounts under their control were. For Defendants to claim that anything other than their own data, and some simple math, is required to calculate the losses that are claimed as damages, and furthermore, that they are somehow surprised or prejudiced by the presentation of this type of evidence lacks even a scintilla of credibility.

*Id*. at 4-5. Thus, because Defendants already have in their possession the information necessary to calculate Plaintiffs' damages and "only the most rudimentary of math skills" is required to make those calculations, Plaintiffs claim Defendants have not been prejudiced and dismissal is not warranted. *Id*. at 7.

In their Reply Brief, Defendants assert that "calculating Plaintiffs' damages claim is anything but simple." (Doc. No. 54 at 2.) By way of example, Defendants pose the following questions:

If we look at Plaintiffs' damages report regarding their "Class E" holdings, it appears as if they made a profit of $13,921 ($583,500 in "Additions" minus $597,421 in "Withdrawals").

If we look at Plaintiffs' damages report for their "Class MA" holdings (the only other report provided by Plaintiffs), it appears as if they only lost $1,141.77. ($123,017.66 9 (Additions) + $19,029.70 (Additions) -$500 (Withdrawals) -$16,420.61 (Withdrawals) = $125,126.75 - $123,984.98 (Ending Equity) = $1,141.77. Surely this isn't the damages Plaintiffs wish to claim, but they insist that the calculations are simple. Any other methodology would be confusing and require expert testimony to explain.

How do Plaintiffs propose that this Court treat the magnified gains and losses they sustained as a result of their notional funding? How are these differences due to notional funding reflected in their damages report?

How are Plaintiffs' management fees factored into their damages claim? How are Plaintiffs' "Incentive fees" factored into their damages claim? Are Plaintiffs asking Defendants to pay for these fees?

What do all of the terms in Plaintiffs' expert damages report mean? What is the difference between "Beginning Equity" and "Adjusted Beginning Equity"? What does "Net realized profit" mean? What is being captured by "Change in Unrealized Profit (Loss)"? What adjustments are being made in "Adjusted Net Performance" and why? Defendants can guess what is supposed to be meant by "Ending Equity" but why should they be forced to do so? The numbers reflected

9

in this column certainly don't make any sense. How was the "Rate of Return" calculated? What does "VAMI" stand for?

*Id*. at 2. In light of the above concerns, Defendants maintain "expert testimony is needed to understand the losses that Plaintiffs are claiming." *Id*. at 3. Because Plaintiffs failed to timely provide Defendants with either the name of their expert or an expert report explaining the basis of their damages calculations, Defendants claim they have been prejudiced and this action should be dismissed.

Fed. R. Civ. P. 26(a)(1) and (2) provide, in relevant part, as follows:

**(a) Required Disclosures**.

**(1)** *Initial Disclosures*

(A) *In General*. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the Court, a party must, without awaiting a discovery request, provide to the other parties:

(i) the name and, if known, the address of and telephone number of each individual likely to have discoverable information – along with the subjects of that information– that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

* * *

**(2) Disclosure of Expert Testimony**.

**(A) In General**. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

**(B) Witnesses Who Must Provide a Written Report**. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

10

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

**(C) Witnesses Who Do Not Provide a Written Report**. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii) a summary of the facts and opinions to which the witness is expected to testify.

**(D) Time to Disclose Expert Testimony**. A party must make these disclosures at the times and in the sequence that the court orders. **Absent a stipulation or a court order, the disclosures must be made:**

**(i) at least 90 days before the date set for trial or for the case to be ready for trial;** or

(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

**(E) Supplementing the Disclosure**. The parties must supplement these disclosures when required under Rule 26(e).

Fed. R. Civ. P. 26(a)(2) (emphasis added).

If a party fails to make a disclosure required by Rule 26(a), Rule 37(a)(3) provides that "any other party may move to compel disclosure and for appropriate sanctions." Fed. R. Civ. P. 37(a)(3). Rule 37(a)(4) states that "[f]or purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." *See* Fed. R. Civ. P. 37(a)(4).

In addition, Rule 37(b) provides for a variety of sanctions that may be imposed for a party's failure to provide or permit discovery. Specifically, this Rule states as follows:

**b) Failure to Comply with a Court Order.**

\* \* \*

**(2) Sanctions Sought in the District Where the Action Is Pending**.

*(A) For Not Obeying a Discovery Order*. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to

11

obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*(C) Payment of Expenses*. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2).

Courts consider four factors in determining whether to invoke discovery sanctions, such as dismissal, under Rule 37(b):  "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *Universal Health Group v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013) (quoting *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002)).  *See also Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366 (6th Cir. 1997); *Lawson v. City of Youngstown*, 2013 WL 5466653 at * 2 (N.D. Ohio Sept. 30, 2013); *Vance v. Secretary, United States Dept of Veterans Affairs*, 289 F.R.D. 254, 256 (S.D. Ohio 2013); *Wilson v. Kaley*, 2012 WL 1068982 at * 2 (N.D. Ohio March 29, 2012).

The first factor– whether the party's failure is due to willfulness, bad faith, or fault, "requires 'a clear record of delay or contumacious conduct.'"  *Barron v. University of Michigan*, 613 Fed. Appx. 480, 484 (6th Cir. 2015) (quoting *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th

12

Cir. 2013)).  Contumacious conduct is "behavior that is 'perverse in resisting authority' and 'stubbornly disobedient.'"  *Id.* (quoting *Carpenter*, 723 F.3d at 704).  "The plaintiff's conduct must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings."  *Carpenter*, 723 F.3d at 705 (internal quotation marks and brackets omitted).

With regard to the second factor, "[a] party is prejudiced when it is 'unable to secure the information requested' and 'required to waste time, money, and effort in pursuit of cooperation which [the opposing party] was legally obligated to provide.'"  *Barron*, 613 Fed. Appx. at 485 (quoting *Harmon v. CSX Transportation*, 110 F.3d 364, 368 (6th Cir. 1997)).  *See also Brown v. Tellermate Holdings Ltd.*, 2015 WL 4742686 at * 7 (S.D. Ohio Aug. 11, 2015).

With regard to the third factor, the Sixth Circuit has "reversed the dismissal of certain cases where the district court failed to 'put the derelict parties on notice that further noncompliance would result in dismissal,' . . . but as this is just one factor, [the Sixth Circuit has] also held that prior warning is not indispensable."  *Fharmacy Records v. Nassar*, 379 Fed. Appx. 522, 524 (6th Cir. 2010) (internal citations omitted).  *See also Universal Health Group*, 703 F.3d at 956 (stating that "[t]here is no magic-words prerequisite to dismissal under Rule 37(b)"); *Harmon v. CSX Transp., Inc*., 110 F.3d 364, 367 (6th Cir. 1997) ("Where a plaintiff has not been given notice that dismissal is contemplated, a district court should impose a penalty short of dismissal *unless the derelict party has engaged in bad faith or contumacious conduct*") (emphasis added); 8B Charles A. Wright and Arthur R. Miller, Fed. Prac. & Proc. § 2289 (3d ed. 2015) ("If there has been an order compelling discovery, . . . it is not ordinarily necessary (although it may be desirable) that the court have warned the sanctioned party in advance of the risk of serious sanctions.")

With regard to the fourth factor, "although it is clear that the failure of the district court to impose or make explicit its consideration of lesser sanctions is not fatal, * * * , [the Sixth Circuit] recently stated that, in the absence of such consideration, and 'in the absence of contumacious conduct, an alternate sanction that would protect the integrity of pretrial procedures should be utilized rather than dismissal with prejudice.'"  *Harmon*, 110 F.3d at 367-368 (quoting *Freeland v.*

13

*Amigo*, 103 F.3d 1271, 1280 (6ᵗʰ Cir. 1997)).

Finally, it bears noting that the Sixth Circuit has "expressed an extreme reluctance to uphold the dismissal of a case merely to discipline a party's attorney." *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 590 (6ᵗʰ Cir. 2001).  *See also Harmon*, 110 F.3d at 367 ("'[T]his court, like many others, has been extremely reluctant to uphold the dismissal of a case . . . merely to discipline an errant attorney because such a sanction deprvies the client of his day in court'")(quoting *Buck v. U .S. Department of Agric., Farmers Home Admin.*, 960 F.2d 603, 608 (6ᵗʰ Cir. 1992)).  Thus, "[d]ismissal is usually inappropriate where the neglect is solely the fault of the attorney." *Carpenter*, 723 F.3d at 704 (quoting *Carter v. City of Memphis*, 636 F.2d 159, 161 (6ᵗʰ Cir. 1980)).

For the following reasons, the Court finds Plaintiffs failed to satisfy their disclosure obligations under Rule 26(a).  The parties were advised, as early as August 2014, that "all disclosures mandated by Fed. R. Civ. P. 26(a) shall apply, including Initial Disclosures (Fed. R. Civ. P. 26(a)(1), Disclosure of Expert Testimony (Fed. R. Civ. P. 26(a)(2), and Pretrial Disclosures (Fed. R. Civ. P. 26(a)(3))."  (Doc. No.  20 at 3.)  The following month, in September 2014, the Court again emphasized that "**t]he parties are reminded of their obligations under Fed. R. Civ. P. 26, as amended.  No witness or exhibit will be permitted unless provided to opposing counsel in accordance with Fed. R. Civ. P. 26.**"  (Doc. No. 24 at 1) (emphasis in original).

It is undisputed that, as part of initial disclosures, Plaintiffs provided Defendants with a spreadsheet that set forth Plaintiffs' alleged damages (hereinafter referred to as "Damages Spreadsheet.")  However, Plaintiffs did not disclose the identity of the accountant who prepared the Damages Spreadsheet (i.e., Mr. Maza) until July 21, 2015, well after the close of the discovery period.  Moreover, while they identified Mr. Maza as the preparer of the Damages Spreadsheet in July 2015, Plaintiffs did not identify Mr. Maza as an expert witness on the issue of damages until September 30, 2015, less than three months prior to trial.

Rule 26(d) provides that "[a] party must make these disclosures at the times and in the sequence that the court orders," and that "[a]bsent a stipulation or court order, the disclosures must

14

be made . . . at least 90 days before the date set for trial." Fed. R. Civ. P. 26(d).  As no expert deadlines were set in this matter, Plaintiffs were required to identify expert witnesses and produce expert reports by no later than 90 days before trial; i.e., September 9, 2015.  As set forth above, Plaintiffs failed to identify Mr. Maza as an expert witness on damages until September 30, 2015, well beyond this deadline.[5]

In their Brief in Opposition to Defendants' Motion to Compel, Plaintiffs ask the Court to place the blame on Defendants, arguing that "Defendants made no discovery request for identification of expert witnesses, or for any detailed explanation of how the report was produced." (Doc. No. 49 at 2.)  The Court rejects this argument.  Pursuant to Rule 26(a)(2)(A), the responsibility for disclosing the identity of an expert witness rests squarely on the party seeking to call that witness at trial.  *See* Fed. R. Civ. P. 26(a)(2)(A).  Plaintiffs' attempt to evade this responsibility by blaming Defendants for failing to request this information, is wholly without merit.

In opposing Defendants' Motion to Dismiss, however, Plaintiffs abruptly change course and maintain that expert testimony is not necessary to establish their damages.  (Doc. No. 53.)  As such, it appears to now be Plaintiffs' position that Mr. Maza is not an expert witness and an expert report explaining the Damages Spreadsheet is neither needed or forthcoming.  Thus, as best this Court can tell, Plaintiffs appear to be arguing that they did not violate any expert disclosure obligations because they do not intend to introduce expert testimony.

The Court is baffled by this argument.  During the September 30, 2015 telephone conference with the Court, Plaintiffs' counsel reported that he had received a "rough draft of the expert report" from Plaintiffs' accountant and expressly advised the Court and defense counsel that the accountant would testify as an expert witness on damages.  When the Court expressed surprise that this was the first time Plaintiffs had disclosed their intent to rely on expert testimony,

---

[5] Other than Mr. Maza, Plaintiffs have not identified any other expert witnesses in this matter.

15

Plaintiffs' counsel did not retreat from his position that Mr. Maza was an expert or that an expert report was forthcoming.  Plaintiffs' attempt to avoid discovery sanctions by now stating that they do not intend to introduce expert testimony only adds to the confusion and is unavailing.

Moreover, regardless of whether Plaintiff characterizes Mr. Maza as an expert witness or not, the fact remains that Mr. Maza prepared the Damages Spreadsheet on which Plaintiffs intend to rely (at least in part) to prove their damages at trial.  Plaintiffs acknowledge they did not identify Mr. Maza as a trial witness until July 2015, well after the close of discovery on May 27, 2015.  Thus, however this witness is characterized, Plaintiffs failed to timely disclose his identity to Defendants as required by Rule 26(a)(1)(A).

The Court further finds that, in addition to failing to timely identify Mr. Maza as a witness, Plaintiffs also failed to timely disclose the "more detailed explanation" of the Damages Spreadsheet that Mr. Maza prepared.  As noted above, during a telephonic status conference on July 21, 2015, Plaintiffs stated that "their accountant was in the process of preparing a report relating to Plaintiffs' alleged damages."  (Doc. No. 44.)  The Court ordered Plaintiffs to produce the accountants' report by no later than August 21, 2015.  *Id.*  Plaintiffs indicate that, on July 21, 2015, counsel informed Defendants that the Damages Spreadsheet "would in fact be the accounting report used at trial," and that "in order to provide a full disclosure, a detailed explanation of the source of the data, methodology used in calculating the values, and the meaning of the values would also be forthcoming."  (Doc. No. 49 at 1.)  During the September 30, 2015 telephone conference with the Court, Plaintiffs acknowledged that they still had not produced this "detailed explanation," despite the fact that the Court had ordered it be produced by no later than August 21, 2015.

The Court finds the "detailed explanation" of Mr. Maza's Damages Spreadsheets is, for all intents and purposes, an expert report on damages.  As such, Plaintiffs were required to produce it by August 21, 2015 pursuant to this Court's July 21, 2015 Order and, in any event, by no later than 90 days before trial (i.e., by September 9, 2015) under Rule 26(d).  As noted above, Plaintiffs failed to produce Mr. Maza's expert report by either of these dates.  Plaintiffs have yet to produce

16

this report, despite the fact that trial is now less than two months away.

Based on the above, the Court finds Plaintiffs have failed to comply with either the disclosure obligations set forth in Rule 26(a) or this Court's July 21, 2015 Order and, therefore, sanctions are warranted under Rule 37. Under the circumstances, however, the Court finds dismissal of this action is not appropriate. While the Court has repeatedly reminded the parties of their obligations under Rule 26, Plaintiffs were not expressly warned that failure to timely identify Mr. Maza as a witness or submit his report could lead to dismissal of this action. Thus, the Court finds the extreme sanction of dismissal would be inappropriate. Defendants' Motion to Dismiss (Doc. No. 52) the Second Amended Complaint is, accordingly, denied.

However, in the alternative, Defendants have also moved *in limine* to exclude "Plaintiffs' [accountant] expert witness and any work product of same." (Doc. No. 51.) In this motion, Defendants argue that "[p]ermitting testimony from a newly added or unidentified witness at trial witness would unduly prejudice Defendants' case," whether such witness is an "expert or otherwise." *Id.* at 1. Plaintiffs did not oppose Defendants' Motion.[6]

Rule 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." As the Sixth Circuit recently explained, "[a] non-compliant party may avoid sanction [under Rule 37(c)] if 'there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless.'" *Howe v. City of Akron*, 801 F.3d 718 (6th Cir. Sept. 17, 2015) (quoting *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010)).

As noted above, regardless of whether Mr. Maza is characterized as an expert witness or not, Plaintiffs failed to timely disclose his identity under Rule 26(a). Plaintiffs have offered no "reasonable explanation" for their failure to do so, nor have they advanced a plausible argument

---

[6] In an email to this Court, Plaintiffs' counsel stated that "we have chosen not the [sic] challenge [Defendants' Motion in *Limine*] and let the documents speak for themselves."

that the mistake was "harmless."  Accordingly, the Court will prohibit Plaintiffs from calling Mr. Maza to testify at trial, either as an expert or fact witness.  Moreover, because they failed to timely identify any expert witnesses under Rule 26(d), Plaintiffs will not be permitted to introduce any expert testimony at trial.  Finally, the Court will prohibit Plaintiffs from introducing at trial any "report" (whether prepared by Mr. Maza or another accountant) purporting to explain or clarify the Damages Spreadsheet.[7]

With regard to the Damages Spreadsheet itself, the Court will reserve ruling with regard to the admissibility of this document.  Although Plaintiffs timely disclosed the Damages Spreadsheet, it is unclear how Plaintiffs intend to introduce it into evidence as Mr. Maza (the preparer of this document) is barred from testifying.  The Court will consider this issue at trial, if necessary.

Finally, Defendants request an award of attorney fees.  (Doc. No. 52 at 5-6.)  The Court will reserve ruling on this request as well.

## IV.    Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss (Doc. No. 52) is DENIED, and  Defendants' Motion in *Limine* (Doc. No. 51) is GRANTED as set forth herein. Defendants' Motion to Compel (Doc. No. 48) is DENIED AS MOOT.

IT IS SO ORDERED.


/s/ Greg White
U.S. Magistrate Judge

Date: November 2, 2015

---

[7]  As Plaintiffs are now excluded from introducing any report explaining the damages spreadsheet, Defendants' Motion to Compel (Doc. No. 48) such report is denied as moot.

18