**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES EMERMAN, *et al.*, | ) | CASE NO. 1:13cv2546 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| FINANCIAL COMMODITY | ) | |
| INVESTMENTS, L.L.C., *et al.*, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendants. | ) | |

Pending before the Court[1] is Defendants Financial Commodity Investments, L.L.C., Financial Investments, Inc., and Craig B. Kendall's Motion for Summary Judgment (Doc. No. 57.) For the following reasons, Defendants' Motion is GRANTED.

I. **Background**

Plaintiffs Charles Emerman and the Sidney Fund LP ("Plaintiffs") filed a Complaint against Defendants Craig B. Kendall and Financial Commodity Investments, L.L.C. ("FCI") on November 18, 2013, alleging (1) fraud and misrepresentation in violation of 7 U.S.C. § 60; and, (2) fraud in the inducement in violation of 7 U.S.C. § 6(b). (Doc. No. 1.) Plaintiffs filed a First Amended Complaint on March 14, 2014, which added claims for breach of fiduciary duty under Virginia and Ohio common law. (Doc. No. 3.) After obtaining leave of Court, Plaintiffs filed a

---

[1] This matter is before the Court upon consent of the parties entered August 28, 2014. (Doc. No. 19.)

Second Amended Complaint on February 3, 2015. (Doc. No. 34.) This complaint continued to allege the same four claims but added Financial Investments, Inc. ("FII") as a Defendant.

In sum, Plaintiffs allege the following. Beginning in December 2010, Plaintiffs invested money with Defendant FCI, a commodity trading advisor owned by Defendant Kendall. Plaintiffs claim they chose to invest with FCI based on FCI's representations that its trading approach was a "trader-driven discretionary model" directed by FCI employee Gaurev Gupta. Plaintiffs claim FCI later issued a Disclosure Document in which it notified clients that they would be informed of any changes in FCI's trading approach that FCI considered to be material. Plaintiffs assert they invested additional funds with FCI based on these representations.

Plaintiffs allege that, in August 2011, FCI switched from a trader-driven discretionary model to a systematic computer-based model, but failed to make Plaintiffs aware of this change. Plaintiffs maintain that, after this alleged switch in trading methodology, they began to suffer significant investment losses. When inquiries were made, Defendants reported it was a "bad market" and there were no other internal explanations for the losses. Plaintiffs claim they did not become aware of the change in the trading methodology until after April 2012. At that time, Plaintiffs withdrew their remaining investment funds from the control of FCI, allegedly suffering a substantial loss.

Plaintiffs assert that Defendant FII is also owned by Defendant Kendall and, in fact, "was the actual entity with which Plaintiff was transacting business during all times pertinent to the Complaint." (Doc. No. 27.) The Second Amended Complaint then sets forth detailed allegations regarding FII's and FCI's corporate histories, as well as a series of allegations regarding regulatory enforcement proceedings initiated by the Commodities Futures Trading Commission ("CFTC") against FII (as a result of which a $130,000 fine was allegedly imposed as well as a permanent injunction allowing for monitoring of FII's compliance with CFTC reporting regulations). (Doc. No. 34 at 8-28.) Plaintiffs allege that "FCI was a fictitious name used deceptively by FII for the advertisement of their commodities investment programs." *Id*. at ¶ 10. Plaintiffs maintain Defendants failed to disclose this fact or the fact that FII had a history

2

of regulatory enforcement proceedings and violations.

Defendants filed their Answer to the Second Amended Complaint and Counterclaims on February 18, 2015. (Doc. No. 37.) Therein, Defendants asserted that, at all times relevant to the instant action, FCI used a trader-driven discretionary trading model and "at no time . . . did FCI or Craig B. Kendall move to a systematic computer-based trading model." *Id.* at ¶¶ 14-15. With respect to Plaintiffs' allegations regarding FII, Defendants alleged "FII was in no way involved with Plaintiffs or any of the transactions or occurrences that are the subject of Plaintiffs' Amended Complaint."[2] *Id.* at ¶ 6.

At this point in the litigation, neither party had expressed the need for expert testimony. Indeed, during the case management conference in September 2014, the parties indicated they did "not anticipate the need for expert testimony," but reserved the right to re-evaluate after the close of non-expert discovery. (Doc. No. 24 at 2.)

A settlement conference was conducted with counsel and clients on May 5, 2015; however, the parties were unable to reach an agreement.[3] (Doc. No. 41.) The Court reminded counsel that the discovery deadline would expire on May 27, 2015. (Doc. No. 41.) Plaintiffs did not identify any expert witnesses at this time, or otherwise express the need to conduct expert discovery.

Subsequently, on July 21, 2015, the Court conducted a telephonic status conference with counsel. (Doc. No. 44.) At that time, the Court noted that the discovery and dispositive motions deadlines had passed, with no dispositive motions having been filed. *Id.* Counsel indicated

---

[2] In addition, Defendants asserted four Counterclaims: (1) declaratory judgment; (2) abuse of process; (3) barratry; and, (4) civil conspiracy. (Doc. No. 37.) On March 11, 2015, Plaintiffs filed a Motion to Dismiss Counterclaims for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6). (Doc. No. 38.) Defendants filed a Brief in Opposition on March 27, 2015 (Doc. No. 39), to which Plaintiffs did not reply. The Court thereafter issued an Opinion & Order granting Plaintiffs' Motion to Dismiss Defendants' Counterclaims. (Doc. No. 43.)

[3] The Court notes that, during mediation proceedings, Plaintiffs relied on a damages spreadsheet that was not self- explanatory.

further settlement discussions would not be productive and agreed the matter should be set for bench trial. *Id.* A Final Pretrial was set for November 24, 2015 (which was later changed to November 19, 2015), with Trial set to begin on December 8, 2015. *Id.* Finally, the Court's Minute Order, issued following the conference, reflected the following:

> Plaintiffs' counsel indicated that their accountant was in the process of preparing a report relating to Plaintiffs' alleged damages. Plaintiffs shall produce the accountants' report to Defendants by no later than Friday, August 21, 2015. In the event Defendants wish to depose Plaintiffs' accountant, Plaintiffs shall make him/her available and cooperate in scheduling such deposition.

(Doc. No. 44.) Plaintiffs did not identify their accountant as an expert witness during this conference, or characterize the report referenced above as an "expert report."

On August 25, 2015, Defendants filed a Motion to Compel Plaintiffs' accounting report, asserting Plaintiffs had failed to produce the report by the Court-ordered deadline of August 21, 2015. (Doc. No. 48.) Plaintiffs filed a Brief in Opposition on September 11, 2015. (Doc. No. 49.) Therein, Plaintiffs argued as follows:

> On July 21, 2015, Counsel for Plaintiff contacted Defendant's Counsel, informing them that the report produced as part of the initial discovery, and made part of their Statement of Damages for mediation, would in fact be the accounting report used at trial. They were also provided with the name of the party who prepared the report, Joseph Maza, and the name and location of the company responsible for the report, Compliance Supervisors International, Inc. in New Jersey. Counsel was further informed that while the report would not change, as far as values, that in order to provide full disclosure, **a detailed explanation of the source of the data, methodology used in calculating the values, and meaning of the values would also be forthcoming.**

*Id.* at 1-2 (emphasis added). Plaintiffs claimed that "[t]he report, in Defendants' possession prior to the mediation, has been produced"[4] and argued that "Defendants will have ample opportunity to cross examine the witness on the source of the data, methodology, and reliability and meaning of the report's results." *Id.* at 2-3.

On September 30, 2015, the Court conducted a telephone conference with counsel regarding Defendants' Motion. (Doc. No. 50.) During that conference, Plaintiffs advised the

---

[4] This report, produced as part of initial disclosures and used by Plaintiffs during mediation, is hereinafter referred to as the "Damages Spreadsheet."

4

Court, for the first time, that Plaintiffs intended to call an accountant as an expert witness at trial. *Id*. Plaintiffs' counsel also indicated that Plaintiffs had not yet completed the final version of the accountant's damages report, despite the fact the Court had ordered it to be produced by no later than August 21, 2015. *Id*. The Court expressed concern that Plaintiffs had failed to either timely identify an expert witness or disclose the expert report ninety (90) days prior to trial, as required by Fed. R. Civ. P. 26(a)(2)(D); and, advised Plaintiffs to disclose their expert report as soon as possible. *Id*.

On October 2, 2015, Defendants filed a Motion *in Limine*, seeking to exclude both the testimony and work product of Plaintiffs' accountant expert witness. (Doc. No. 51.) Plaintiffs failed to file a timely Brief in Opposition. Moreover, in an email to the Court dated October 22, 2015, Plaintiffs' counsel expressly stated that "[w]ith regard to the motion to exclude the expert witness, we have chosen not to challenge it and [will] let the documents speak for themselves."

Not long thereafter, on October 20, 2015, Defendants filed a "Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted Pursuant to FRCP 12(B)(6) and FRCP 37(b)(2)(A)," seeking dismissal and/or discovery sanctions based on Plaintiffs' failure to timely disclose either the identity or report of its accountant expert witness. (Doc. No. 52.) Plaintiffs filed a Brief in Opposition on October 28, 2015, in which they claimed expert testimony would not be necessary because "the damage calculation is a simple matter of taking the initial investment, or the in case of Sydney, the amount invested in a given month, and calculating the loss for each month." (Doc. No. 53 at 3.) Plaintiffs insisted that "using simple monthly statements, and simple math, Plaintiffs are able to prove their damages." *Id*. at 5.

Defendants replied on October 29, 2015. (Doc. Nos. 54.) Defendants strongly contested Plaintiffs' statement that their damages calculation is a matter of "simple math," noting that Plaintiffs had failed to either identify the time period in question or explain how the "magnified gains and losses they sustained as a result of notional funding"[5] should be treated. *Id.* at 2.

---

[5] According to the National Futures Association website, "an account is notionally funded when the client directs the [Commodities Trading Advisor] to trade the account as

5

Moreover, Defendants noted that Plaintiffs had also failed to articulate how Plaintiff Sydney Fund's substantial management fees[6] should be factored into the damages calculations. *Id.*

On November 2, 2015, the Court issued a Memorandum Opinion & Order in which it denied in part and granted in part Defendants' motions. (Doc. No. 55.) Therein, the Court found Plaintiffs failed to satisfy their disclosure obligations under Fed. R. Civ. P. 26(a) because they failed to either (1) timely identify their accountant (Joseph Maza) as an expert witness on damages; or, (2) timely disclose the "more detailed explanation" of the damages spreadsheet that Mr. Maza prepared, which the Court considered to be Plaintiffs' expert report on damages. *Id.* at 14-16. Accordingly, sanctions were found to be warranted under Rule 37. While the Court declined to impose the drastic sanction of dismissal, it did prohibit Plaintiffs from calling Mr. Maza to testify at trial, either as an expert or fact witness. *Id.* at 18. Moreover, because Plaintiffs failed to timely identify any expert witnesses under Rule 26(d), the Court determined that Plaintiffs would not be permitted to introduce any expert testimony at trial. *Id.* Finally, the Court prohibited Plaintiffs from introducing at trial any "report" (whether prepared by Mr. Maza or another accountant) purporting to explain or clarify the Damages Spreadsheet.[7] *Id.*

Plaintiffs filed their Trial Brief ten days later, on November 12, 2015. (Doc. No. 58.) That same day, Defendants filed their "Motion for Summary Judgment, and alternatively, Trial Brief." (Doc. No. 57.) Therein, Defendants acknowledge the dispositive motion deadline has

---

if the funding amount was higher than the actual funds on deposit in the client's account." *See* http://www.nfa.futures.org.

[6] Defendants allege that "[a]s included in Sidney Fund's disclosure documents to investors, [Plaintiff's management fees] amount to a staggering 23% of total account balance values." (Doc. No. 57 at 3.) Plaintiffs do not dispute this figure in their Brief in Opposition.

[7] With regard to the Damages Spreadsheet itself, the Court reserved ruling with regard to the admissibility of this document. The Court explained that: "Although Plaintiffs timely disclosed the Damages Spreadsheet, it is unclear how Plaintiffs intend to introduce it into evidence as Mr. Maza (the preparer of this document) is barred from testifying. The Court will consider this issue at trial, if necessary." (Doc. No. 55 at 18.)

passed but argue that "[i]n light of this Court's November 2nd Order barring Plaintiffs from using expert testimony, an exception to the dispositive motion deadline is required." *Id.* at 5. Defendants again contest Plaintiffs' claim that damages are a matter of "simple math," asserting expert testimony is required to establish Plaintiffs' alleged damages in light of the inherent complexity of the calculations in this case. Because the Court's November 2, 2015 Order now precludes Plaintiffs from introducing expert testimony, Defendants argue there is "good cause" for the late filing of their summary judgment motion. They assert Plaintiffs have not come forward with sufficient evidence of damages to create a genuine issue of material fact for trial and, therefore, summary judgment should be entered in Defendants' favor as to all of Plaintiffs' claims.

A Final Pretrial conference was conducted with counsel on November 19, 2015. (Doc. No. 62.) During that conference, the Court expressed concern regarding Plaintiffs' ability to prove damages. Plaintiffs' counsel continued to insist that expert testimony would not be necessary, and claimed they need only compare the opening and closing balances set forth on FCI's monthly statements in order to establish their losses. Defendants strongly disagreed, noting in particular that Plaintiffs had failed to explain how their damages calculation would be impacted by notional funding and Plaintiffs' assessment of management fees.

At the conclusion of the conference, the Court remained concerned about Plaintiffs' ability to prove damages and, therefore, set a briefing schedule on Defendants' summary judgment motion. (Doc. No. 62.) The Court specified, however, that Defendants' motion would be limited to the issue of damages; specifically, whether Plaintiffs' alleged damages can be established without the benefit of expert testimony. *Id*. Plaintiffs submitted their Brief In Opposition on December 7, 2015. (Doc. No. 63.) Defendants replied two days later, on December 9, 2015. (Doc. No. 64.)

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and states:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which

7

> summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

In considering summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)(*citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*. "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Anderson*, 477 U.S. at 257.

In other words, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). When ruling on a motion for summary judgment, "a judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it,

upon whom the onus of proof is imposed.'" *Anderson*, 477 U.S. at 252 (citations omitted); *accord Fuller v. Landmark 4 LLC*, 2012 WL 1941792 (N.D. Ohio May 29, 2012). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter ...." *Anderson*, 477 U.S. at 249. "It is an error for the district court to resolve credibility issues against the nonmovant." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008).

### III. Law and Analysis

#### A. Timeliness of Defendants' Motion

As an initial matter, the Court finds that, under the specific circumstances presented, it is appropriate to consider Defendants' summary judgment motion despite the fact it was filed after the June 29, 2015 dispositive motion deadline. As noted above, Plaintiffs did not identify Mr. Maza as an expert witness until September 30, 2015, three months after the dispositive motion deadline had passed. Plaintiffs indicated an expert report regarding damages was forthcoming and then abruptly changed course, stating (to the confusion of all) that, in fact, no expert report was necessary to prove damages. Thereafter, on November 2, 2015, the Court issued an Opinion and Order barring Plaintiff from introducing (1) any expert testimony at trial; and, (2) any report (whether prepared by Mr. Maza or another accountant) purporting to explain or clarify Plaintiffs' Damages Spreadsheet. (Doc. No. 55 at 18.)

The Court agrees with Defendants that the above sequence of events changed the complexion of the case, and justified the late filing of the Defendants' summary judgment motion. It was only when the Court issued its November 2, 2015 Opinion & Order that the parties became fully aware of the challenges Plaintiffs would face in terms of their ability to prove damages at trial. Defendants promptly filed their motion for summary judgment ten days later. Under the circumstances, the Court finds good cause for Defendants' failure to move for summary judgment prior to the expiration of the dispositive motion deadline.

#### B. Whether Summary Judgment is Appropriate on the issue of Damages

In their Trial Brief, Plaintiffs set forth various legal theories regarding the appropriate

measure of damages with respect to each of their four claims. With regard to Plaintiffs' statutory claims under 7 U.S.C. §§ 6b and 60, Plaintiffs assert that the "New York Rule" has been applied in calculating damages "when an item of fluctuating value is wrongfully sold, converted, or not purchased when it should have been." (Doc. No. 58 at 10.) According to Plaintiffs, "[u]nder this theory, a plaintiff can receive either the value of the stock at the time of the wrongful act or the highest intermediary stock price between the date of the act and a reasonable time thereafter during which the stock could have been replaced by the plaintiff, whichever is greater." *Id*. at 11. Plaintiff assert that the "New York Rule" also applies with respect to computation of damages for their breach of fiduciary duty claim under Ohio law. *Id.* at 14.

Finally, with respect to Plaintiffs' breach of fiduciary claim under Virginia law, Plaintiffs claim that "Virginia courts require an analysis of how the duty was generated before determining the method of damage calculation." *Id*. at 17. Where the duty sounds in contract, Plaintiffs claim Virginia courts use the economic loss rule in formulating damages. According to Plaintiffs, this would include damages for lost profits to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. *Id*. at 19. Alternatively, Plaintiffs claim, "Virginia Courts have sustained verdicts based on simple loss/interest calculations when supported by documents and/or testimony." *Id.*

While Plaintiffs set out these various legal theories, they fail to apply any of them to the facts of the instant case. In other words, Plaintiffs do not offer any discussion or explanation regarding how damages should be calculated (under any of the legal theories described above) based on the investments at issue herein.

Defendants do not contest the applicability of the New York Rule to Plaintiffs' statutory claims and Ohio law breach of fiduciary duty claim, or the applicability of the economic loss rule to Plaintiffs' Virginia law breach of fiduciary duty claim.[8] Rather, Defendants appear to assert

---

[8] Because it is not necessary to the resolution of Defendants' motion, the Court does not offer any opinion regarding whether Plaintiffs have correctly identified the legal theories of damages applicable to their various claims.

that Plaintiffs cannot prove damages without expert testimony, regardless of what damages theory is applied. In this regard, Defendants emphasize Plaintiffs' continued failure to address the impact of notional funding and Plaintiffs' high management fees on their alleged losses. Defendants also argue as follows:

> It should also be noted that Plaintiffs made several additions to and withdrawals from their accounts with FCI throughout the time period in question. How does that factor into the damages calculation? If a withdrawal is made prior to Plaintiffs' alleged 'discovery' [of the change in trading methodology], does it count toward their damages? If so, should that amount be prorated in any way?
>
> Still further, there is ample debate as to whether the 'high water mark' should be factored into Plaintiffs' damages calculations. If so, then how?

(Doc. No. 57 at 4.) Defendants further state that Plaintiffs and Defendants have their own monthly earning statements "that appear to have no correlation to one another" and that "[s]uch conflicting information demands an expert witness to assist the judge in understanding the evidence." *Id*. at 7. In light of the above, Defendants claim Plaintiffs cannot prove damages without expert testimony and, therefore, summary judgment should be entered in Defendants' favor as to all of Plaintiffs' claims.

In their Brief in Opposition, Plaintiffs do not address any of the specific issues raised by Defendants regarding notional funding, management fees, pre-discovery withdrawals, or the high water mark. Instead, the entirety of Plaintiffs' response is as follows:

> As stated in Plaintiffs [sic] trial brief, the New York rule is an appropriate measure for damages in unauthorized trading cases. In support of their ability to prove their damages, Plaintiffs have offered a sample of the voluminous evidence they will present at trial. Exhibits 1-4 are the weekly runouts of the losses sustained in August alone. Exhibits 5 and 6 are the end of month runouts of September and October. Exhibits 5-30 are the weekly runouts showing the build up, additions and closing of the accounts after the switch from MF Global to RJ Obrien. These account snapshots show that Plaintiffs are able to show an opening balance, closing balance, and change from week to week, and at trail [sic], day to day of their account balance.
>
> Plaintiffs will be able to testify as to each daily statement, as well as any changes to their account (whether it be via consolidation of two or more accounts, assignment of different account numbers, withdraws or additional investment). At a minimum we can clearly identify the value of their accounts on August 1, 2011, by referring to the number in the far right column next to the annotation LV for liquidating value. The exhibits make evident that losses began on August 1, 2011 and continued through the month of August. When the statements switch in November of 2011 from MF Global to RJ Obrien, the format is slightly different,

11

> but the results are the same. By referring to the highlighted LV value, we can again determine the value of each account held by Plaintiffs on any given day. By way of simple example, the value of the Sidney Fund LP account decreased from a high of $344261.20 on March 6, 2012 to a value of $322,781.29 when the account was liquidated on April 20, 2012. This is a difference of $21,480.41.
>
> While not the only damage, this is a simple example of how the accounts lost value during the unauthorized trading based on an undisclosed and materially different trading scheme, which negated the original grant of power of attorney. As addressed in the trial brief, the proper award of damages is the high value of the account. Plaintiffs offer theses [sic] exhibits, incorporated herein as fully rewritten, as example of the evidence of the decrease in their value through the unauthorized trading undertaken by Defendants. As this is only summary judgment, Plaintiffs must only show that there is a genuine issue of material fact. A simple comparison of the values from exhibit to exhibit shows that Plaintiffs can prove loss of value in their accounts. With regards to the precise value, that is a matter for trial and the findings of fact. Plaintiffs have offered more than a scintilla of evidence, as alleged by Defendant, and summary judgment should be denied.

(Doc. No. 63 at 3-4.)

Plaintiffs then attach approximately 200 pages of Exhibits to their Brief in Opposition. (Doc. Nos. 63-1 through 63-22.) No explanation (other than what is quoted above) is provided with respect to these Exhibits. The Court notes the Exhibits are multi-page spreadsheets, each of which contains multiple columns of unexplained numbers and abbreviations. Plaintiffs' Exhibits are not accompanied by an affidavit that either identifies any of the individual documents or explains what the various numbers and abbreviations mean. Nor do Plaintiffs explain how their overall damages can be ascertained from the bewildering array of spreadsheets presented. Plaintiffs also fail to direct the Court's attention to any deposition testimony that explains or discusses any of the specific Exhibits attached to Plaintiffs' Brief in Opposition, or Plaintiffs' damages generally.[9] Finally, Plaintiffs do not direct this Court's attention to any evidence setting forth a specific itemization of their claimed damages, other than the one example set forth in the quoted text above.

For the following reasons, the Court finds that Plaintiffs have failed to come forward with any evidence from which a reasonable trier of fact could ascertain damages. Notwithstanding

---

[9] Defendants assert that Plaintiffs did not take a single deposition in this case. Plaintiffs do not challenge this assertion.

Plaintiffs' protestations to the contrary, the Exhibits attached to Plaintiffs' Brief in Opposition are far from self-explanatory. As noted above, these Exhibits consist of nearly 200 pages of financial spreadsheets containing various unexplained abbreviations, terms, and numbers. Plaintiffs do not direct this Court's attention to any documentary evidence, affidavits, or deposition testimony that clearly explain the meaning of these documents. Plaintiffs cannot demonstrate the existence of a genuine issue of material fact by simply attaching hundreds of pages of financial documents to their Brief in Opposition without any accompanying explanation. In the face of Defendants' summary judgment motion, Plaintiffs were required to come forward with evidence from which a reasonable trier of fact could ascertain damages. Based on the record before it, the Court finds Plaintiffs have failed entirely to do so.

This finding is further buttressed by the fact that Plaintiffs have made no effort whatsoever to address Defendants' concerns regarding how damages are impacted by Plaintiffs' notional funding, management fees, and withdrawals prior to their discovery of Defendants' alleged change in trading methodology. Defendants have raised valid questions about how these issues would effect Plaintiffs' damages calculations and argue, persuasively, that these questions can only be answered through expert testimony. Plaintiffs fail to address any of these issues in their Brief in Opposition, leaving Defendants' arguments in this regard basically unopposed.

Plaintiffs also fail to address Defendants' questions regarding the "high water mark." While Plaintiffs assert in passing that "the proper award of damages is the high value of the account," they offer no explanation as to how that "high value" should be determined. Plaintiffs make no effort to connect this concept to any of the documents attached to their Brief in Opposition or to otherwise explain with any specificity how it impacts their damages calculations.

Plaintiffs' failures in this regard are all the more perplexing when one considers the fact that they had every opportunity to obtain expert testimony regarding damages. The parties were offered the opportunity to request expert deadlines during the September 16, 2014 Case Management Conference ("CMC"). At that time, counsel indicated they did not anticipate the

need for expert testimony; however, the Court provided that "after the close of non-expert discovery, the parties will have the opportunity to re-evaluate the need for expert testimony." (Doc. No. 24 at 2.) Although the Court thereafter conducted telephonic status conferences with counsel in January, February, April and May 2015, Plaintiffs' counsel did not, at any point during these conferences, identify an expert witness or otherwise express the need to conduct expert discovery. (Doc. Nos. 29, 35, 40, 42.) It was not until July 21, 2015 (nearly two months after close of non-expert discovery) that Plaintiffs indicated their accountant was in the process of preparing a report regarding damages. (Doc. No. 44.) Although well past the discovery deadline, the Court nevertheless allowed Plaintiffs to produce their report by no later than August 21, 2015. Plaintiffs failed to do so. In September 2015, Plaintiffs for the first time identified their accountant as an expert witness but acknowledged that they had still failed to produce the accountant's report that had been due by August 21, 2015. As Defendants correctly note, Plaintiffs never did produce their accountant's expert report regarding damages.

Although not cited by Plaintiffs, the Court acknowledges there is case law holding that "[e]xpert testimony is not necessary to assist jurors with basic arithmetic." *Advanced Drainage Systems, Inc. v. Quality Culvert, Inc*., 2015 WL 1299368 at * 8 (S.D. Ohio March 23, 2015). *See also United States v. Madison*, 226 F. App'x 535, 544 (6th Cir. 2007) (finding that a lay witness's "conclusion ... is a matter of arithmetic 'within the capacity of any reasonable lay person' "); *In re Meridia Products Liab. Litig*., 328 F.Supp.2d 791, 808 (N.D. Ohio 2004), *aff'd sub nom. Meridia Products Liab. Litig. v. Abbott Labs.*, 447 F.3d 861 (6th Cir. 2006) ("If a witness performs 'simple arithmetic' and avoids analyzing the data, the witness does not need to qualify as an expert").

Plaintiffs herein, however, have not demonstrated that their damages calculations are simply a matter of basic arithmetic. The only evidence Plaintiffs have identified in support of damages are the Exhibits attached to their Brief in Opposition. As explained above, these Exhibits are a confusing assortment of financial spreadsheets containing unexplained abbreviations, terms, and numbers. Plaintiffs have come forward with no evidence (either in the

form of documentary evidence, affidavits, or deposition testimony) to explain these spreadsheets or how they establish Plaintiffs' alleged losses. Moreover, Plaintiffs have failed entirely to address, from a mathematical standpoint, how their damages calculations are impacted by their notional funding and management fees. Courts have not hesitated to enter summary judgment in a defendant's favor where a plaintiff is unable to establish damages in the absence of expert testimony. *See e.g. The Antioch Company Litigation Trust v. Morgan*, 2014 WL 1365949 (S.D. Ohio April 7, 2014).

Accordingly, based on the above, the Court finds that Plaintiffs have failed to come forward with any evidence from which a reasonable trier of fact could ascertain damages. Regardless of whether the New York Rule or some other legal theory may apply with respect to the damages calculations for Plaintiffs' various claims, the Court finds Plaintiffs have failed to establish a genuine issue of material fact regarding damages. Defendants, therefore, are entitled to summary judgment in their favor with respect to all of Plaintiffs' claims.

## IV.  Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. No. 57) on the issue of damages is GRANTED.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: January 19, 2016